# IN THE SUPREME COURT OF IOWA

No. 41 / 06-1904

Filed March 30, 2007

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD**,

Complainant,

vs.

**BRIAN L. EARLEY**,

Respondent.

On review of the findings and recommendations of the Grievance Commission.

Grievance Commission found several instances of attorney misconduct by the respondent and recommended suspension of his license to practice law. **LICENSE SUSPENDED.**

Charles L. Harrington and Teresa A. Vens, Des Moines, for complainant.

Brian L. Earley, Montezuma, pro se.

**LARSON, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board charged Brian L. Earley with numerous violations of the Iowa Code of Professional Responsibility for Lawyers based on his representation of three separate clients. The Grievance Commission concluded that Earley violated certain provisions of the Iowa Code of Professional Responsibility and recommended that we suspend Earley's license to practice law for a period of not less than six months.

We agree with the commission's findings of misconduct and suspend Earley's license to practice law for a period of not less than four months.

## I. *Standard of Review.*

Our review of attorney disciplinary proceedings is well established. We review the commission's findings de novo. *See* Iowa Ct. R. 35.10(1) (2005); *Iowa Supreme Ct. Attorney Disciplinary Bd. v. Lesyshen,* 712 N.W.2d 101, 104 (Iowa 2006).

> "We give respectful consideration to the Grievance Commission's findings and recommendations, but are not bound by them."
>
> The Board must prove attorney misconduct by a convincing preponderance of the evidence. This burden is less than proof beyond a reasonable doubt, but more than the preponderance standard required in the usual civil case. Once misconduct is proven, we "may impose a lesser or greater sanction than the discipline recommended by the grievance commission."

*Iowa Supreme Ct. Attorney Disciplinary Bd. v. Conrad,* 723 N.W.2d 791, 791-92 (Iowa 2006) (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lett,* 674 N.W.2d 139, 142 (Iowa 2004)).

## II. *Factual Findings.*

Earley has been practicing law in Iowa since 1993. At the time of the conduct in this case, Earley was a solo practitioner in Montezuma, Iowa,

practicing primarily in the area of criminal defense. The board filed this complaint with the commission for neglect, failure to return a file to the client, failure to cooperate with the board, and trust account violations arising from Earley's representation of three separate clients.

A. *Betty Hartung matters.* Earley agreed to represent Betty Hartung in her efforts to receive a portion of her ex-husband's retirement funds (the property case), which Ms. Hartung alleged had not been disclosed at the time of the dissolution decree, and related child custody issues (the dissolution case).

1. *The property case.* Ms. Hartung's property case was filed by another attorney, whose license to practice law was suspended in August 2000. In July 2000 the court notified Ms. Hartung that the case would be dismissed if it was not tried before January 1, 2001. Ms. Hartung hired Earley to represent her in this case sometime after December 26, 2000. It is unclear what agreement Ms. Hartung and Earley had regarding the steps he would take prior to the January 1, 2001 deadline. In any event, Ms. Hartung's property case was dismissed on January 2, 2001. Earley entered an appearance in the case on January 8, 2001, but took no action to set aside the dismissal. Earley took no further action in this case despite Ms. Hartung's numerous attempts to contact him regarding the matter. Ultimately, Ms. Hartung hired another attorney to pursue her case and was awarded a one-half interest in her ex-husband's retirement funds.

Both Ms. Hartung and her attorney requested that Earley provide them with a copy of Ms. Hartung's file. Earley did not respond to the letter from Ms. Hartung's attorney nor did he make any arrangements to provide the file to either Ms. Hartung or her attorney.

2. *The dissolution case.* Ms. Hartung also retained Earley to represent her with respect to her ex-husband's application for modification

of their dissolution decree. Initially, Ms. Hartung's ex-husband requested a reduction in child support and increased visitation but later amended his application to seek custody of the parties' minor child. Earley did not provide Ms. Hartung with the motion to amend nor did he notify her when the court approved the amendment. Ms. Hartung ultimately learned of the amendment when she requested a copy from the clerk of court. Ms. Hartung attempted to contact Earley numerous times regarding the modification hearing, but her attempts were, in large part, ignored.

Shortly before the June 12, 2003 hearing, Ms. Hartung told Earley that her daughter wanted to live with her, not her ex-husband. Earley did not talk directly to Ms. Hartung's daughter nor did he conduct an independent investigation to support Ms. Hartung's position that she should retain custody. Ms. Hartung's daughter testified at the hearing that she did not want to remain in the custody of her mother, and the court advised the parties immediately following the hearing that he would be awarding custody to Ms. Hartung's ex-husband. Although Earley wrote to Ms. Hartung and informed her that the court was changing custody, he did not advise her of the timeline for appeal nor did he provide her with a copy of the court's decree. Ms. Hartung received the court's decree by contacting the clerk of court directly.

Ms. Hartung filed a complaint with the board in May 2003. Earley received a copy of the complaint in July 2003, but did not provide the board with any response.

Ms. Hartung paid Earley $4000, which Earley withdrew from his trust account between February 10, 2001, and May 9, 2003. He did not notify Ms. Hartung at the time he withdrew the funds, and he did not provide her with an accounting of his services at any time after February 2001.

B. *Jon Lloyd matters.* Jon Lloyd was convicted of a Colfax City Code violation for permitting barking dogs to cause an annoyance or disturbance, and the city counsel ordered Mr. Lloyd to remove his dogs from the city limits. Mr. Lloyd moved his dogs to his son's home outside the city and hired Earley to help him return his dogs to his home in Colfax. It appears Earley and Mr. Lloyd agreed by telephone they would first appeal Mr. Lloyd's conviction and then file a petition for judicial review to enjoin the city from enforcing its notice of removal of Mr. Lloyd's dogs. Earley and Mr. Lloyd's first, and only, in-person meeting was at the courthouse in July 2002. Mr. Lloyd paid Earley $500 at that time, and Earley filed the appeal. The $500 was not deposited into a trust account, and Mr. Lloyd did not receive an accounting of Earley's services. Subsequently, Earley dismissed the appeal without obtaining Mr. Lloyd's permission to do so.

Earley then filed a petition for judicial review. The court ordered that briefs were to be filed by December 20, 2002, and scheduled oral arguments for January 21, 2003. Earley notified Mr. Lloyd that he was to be present at the January 21, 2003 oral arguments; however, Earley did not inform Mr. Lloyd when the hearing was rescheduled, and Mr. Lloyd appeared for the hearing on January 21, 2003, only to learn it had been continued. Earley then notified Mr. Lloyd that the hearing had been reset for March 10, 2003, and that Mr. Lloyd was to be present. Earley failed to file a brief as ordered by the court and, as a result, the petition for judicial review was dismissed. Earley did not notify Mr. Lloyd that the case had been dismissed, and Mr. Lloyd appeared for the hearing on March 10, 2003, only to learn his case had been dismissed.

Earley filed another petition for injunctive relief on behalf of Mr. Lloyd on February 21, 2003. The court ordered Earley to file appropriate pleadings by July 1, 2003; however, he failed to comply, and the petition

was dismissed. Mr. Lloyd was never able to return his dogs to his home in Colfax.

Mr. Lloyd filed a complaint with the board, and notice of the complaint was mailed to Earley but was returned marked "unclaimed." Earley was then personally served, but did not respond to the board.

C. *Richard Lowry matter.* Mr. Lowry was charged with a speeding violation and hired Earley to represent him in the matter. Mr. Lowry paid Earley $150 for his services, which was not deposited into a trust account nor was an accounting for Earley's services provided to Mr. Lowry. Mr. Lowry wanted Earley to try to negotiate a settlement with the county attorney so his driver's license would not be suspended. Earley was unsuccessful in negotiating a settlement, and trial was scheduled for August 12, 2004. Earley did not inform Mr. Lowry of the trial date. Earley did not appear for the trial, contending that, because the police officer appeared to testify, Mr. Lowry would not have prevailed. Mr. Lowry was found guilty of the speeding charge.

### III. *Ethical Violations.*

A. *Neglect.* We have held that professional neglect involves "indifference and a consistent failure to perform those obligations that a lawyer has assumed, or a conscious disregard for the responsibilities a lawyer owes to a client." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Moorman,* 683 N.W.2d 549, 551 (Iowa 2004). Neglect is more than negligence, and it often involves procrastination, "such as a lawyer doing little or nothing to advance the interests of a client." *Id.* at 552.

We conclude the board has proven that Earley neglected the legal matters of three clients in violation of DR 6-101(A)(3) and intentionally failed to seek the lawful objectives of these clients in violation of DR 7-101(A)(1). Earley clearly neglected these clients' legal matters in his failure

to communicate with his clients. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Kennedy*, 684 N.W.2d 256, 260 (Iowa 2004); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sherman*, 619 N.W.2d 407, 409 (Iowa 2000). In addition, Earley failed to take any action to pursue Ms. Hartung's property case, to involve Ms. Hartung in preparation for the modification hearing, and to advise Ms. Hartung of the time period within which to appeal the court's custody decision. Earley dismissed Mr. Lloyd's appeal without first consulting him and, more troubling, failed to file briefs and other pleadings in Mr. Lloyd's petitions for judicial review, which ultimately resulted in dismissals. *See Lesyshen*, 712 N.W.2d at 105. Finally, Earley failed to inform Mr. Lowry of his trial date and failed to appear at the hearing resulting in Mr. Lowry being found guilty of the speeding violation. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Feeney*, 657 N.W.2d 454, 457 (Iowa 2003).

B. *Fitness to practice law and prejudice to the administration of justice.* Earley's failure to timely file documents with the court in Mr. Lloyd's case and his failure to respond to the board's inquiries is conduct prejudicial to the administration of justice in violation of DR 1-102(A)(5) and is conduct that adversely reflects on the attorney's fitness to practice law in violation of DR 1-102(A)(6). *See Iowa Supreme Ct. Attorney Disciplinary Bd. v. Sotak*, 706 N.W.2d 385, 389 (Iowa 2005); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Grotewold*, 642 N.W.2d 288, 293 (Iowa 2002).

C. *Failure to return file to client.* Earley's failure to return Ms. Hartung's file to her upon her request, and the request of her attorney, is a violation of DR 2-110(A)(2) (providing that a lawyer shall not withdraw from employment until reasonable steps have been taken to return to the client all papers and property to which the client is entitled), and DR 9-102(B)(3) (providing that a lawyer shall promptly deliver to the client the

properties in the possession of the lawyer that the client is entitled to receive). *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Plumb*, 589 N.W.2d 746, 748 (Iowa 1999).

D. *Trust account violations.* Finally, the board has proven that Earley failed to properly deposit client funds in his trust account in violation of DR 9-102(A), and failed to render proper accountings to his clients in violation of DR 9-102(B)(3). Earley failed to notify Ms. Hartung at the time he withdrew monies from his trust account and failed to provide her with an accounting after February 2001. Earley also failed to deposit Mr. Lloyd's and Mr. Lowry's monies in his trust account and failed to provide either with an accounting of his services.

In summary, we conclude that Earley's conduct in representing these clients violated the following disciplinary rules: DR 1-102(A)(1), (5), (6), DR 2-110(A)(2), DR 6-101(A)(3), DR 7-101(A)(1), and DR 9-102(A), (B)(3).

**IV.** *Sanction.*

There is no standard sanction for a particular type of misconduct, and though prior cases can be instructive, we ultimately determine an appropriate sanction based on the particular circumstances of each case. *Plumb*, 589 N.W.2d at 748-49. In determining an appropriate sanction, we consider "the nature of the violations, the need for deterrence, protection of the public, maintenance of the reputation of the Bar as a whole, and the violator's fitness to continue to practice law," as well as any aggravating and mitigating circumstances. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Ramey*, 639 N.W.2d 243, 245 (Iowa 2002); *Grotewold*, 642 N.W.2d at 294. When neglect is the primary violation, the sanction generally ranges from a public reprimand to a six-month suspension. *Grotewold*, 642 N.W.2d at 294.

Earley acknowledges that some level of discipline is warranted and suggests we impose a thirty-day suspension. We conclude that a more severe sanction is warranted. Earley's conduct indicates a pattern of neglect that clearly affected his clients' interests and perception of the legal profession. Though Earley contends his clients were not harmed by his misconduct, we do not agree. Ms. Hartung did not receive her portion of her ex-husband's retirement funds until 2004, three years after she hired Earley to represent her in the matter, Mr. Lloyd was never able to return his dogs to his home, and Mr. Lowry was denied the chance to present his case to the court for consideration.

Earley also contends his sanction should be mitigated by the health problems he had during his representation of these clients. However, it is unclear, even from Earley's testimony, that his health problems did, in fact, contribute to his misconduct. Though an attorney's personal problems may contribute to misconduct, we have firmly held that such personal problems do not excuse the misconduct. *Id.* at 295.

Earley's neglect is compounded by his failure to return Ms. Hartung's file to her, and his complete failure to respond to the board's inquiries. Additionally, Earley's trust account violations, though stemming from poor office organization and management, are serious ethical violations that undermine the public's trust in the accountability of the legal profession. We must also note that Earley has been previously publicly reprimanded by this court. Finally, we acknowledge that Earley has accepted responsibility for his misconduct and has taken steps to improve his office procedures.

The purposes of attorney disciplinary proceedings include "protecting the courts and the public from persons unfit to practice law, vindicating public confidence in the integrity of our system of justice, and deterring other lawyers from similar misconduct." *Iowa Supreme Ct. Bd. of Prof'l*

*Ethics & Conduct v. Hansel*, 558 N.W.2d 186, 192 (Iowa 1997). In light of the facts and circumstances of this case, we conclude that a suspension of Earley's license to practice law for a period of not less than four months is appropriate. *See Iowa Supreme Ct. Attorney Disciplinary Bd. v. Ireland*, 723 N.W.2d 439 (Iowa 2006) (three-month suspension for neglect causing financial harm, failure to deliver property to client, and prior disciplinary action); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Frerichs*, 671 N.W.2d 470 (Iowa 2003) (four-month suspension for neglect, an illegal fee, a trust account violation, failure to provide an accounting, and failure to cooperate); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Kallsen*, 670 N.W.2d 161 (Iowa 2003) (three-month suspension for neglect, failure to render an accounting, and failure to cooperate); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Adams*, 623 N.W.2d 815 (Iowa 2001) (three-month suspension for neglect, trust account violations, failure to account for client property, and misrepresentation).

## V. *Conclusion.*

Earley's license to practice law is suspended indefinitely with no possibility of reinstatement for at least four months. This suspension shall apply to all facets of the practice of law. Iowa Ct. R. 35.12(3). Additionally, Earley is required to refund $4000 to Ms. Hartung, $500 to Mr. Lloyd, and $150 to Mr. Lowry, as these fees were not earned by Earley due to his neglect. Earley shall provide all of the notifications required by Iowa Court Rule 35.21. Upon any application for reinstatement, Earley shall have the burden to show he has not practiced law during the period of suspension, that he has refunded all unearned fees to the clients discussed above, and that he meets the requirements of Iowa Court Rule 35.13. Costs are taxed to Earley pursuant to Iowa Court Rule 35.25(1).

**LICENSE SUSPENDED.**