# IN THE SUPREME COURT OF IOWA

No. 09–0701

Filed October 16, 2009

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**BRIAN L. EARLEY,**

Respondent.

On review of the report of the grievance commission.

Grievance commission reports respondent has committed ethical infractions and recommends revocation of respondent's license to practice law. **LICENSED REVOKED.**

Charles L. Harrington and Elizabeth E. Quinlan, Des Moines, for complainant.

Brian L. Earley, Malcolm, pro se.

**TERNUS, Chief Justice.**

The complainant, Iowa Supreme Court Attorney Disciplinary Board, filed charges against the respondent, Brian L. Earley, alleging numerous violations of the Iowa Code of Professional Responsibility for Lawyers and the Iowa Rules of Professional Conduct.[1]  The complaint was based on Earley's representation of four separate clients.  While most of the misconduct centered on Earley's neglect of his clients' legal matters, the most egregious of the alleged violations involved his misappropriation of client funds.  Earley did not file an answer to the complaint, and the allegations of the board were, therefore, deemed admitted.  *See* Iowa Ct. R. 36.7.  A panel of the Iowa Supreme Court Grievance Commission, after hearing, concluded that Earley engaged in the charged misconduct and recommended that we revoke his license to practice law.  We agree with the commission and revoke Earley's license to practice law.

## I.  Standard of Review.

Our review of attorney disciplinary proceedings is de novo.  Iowa Ct. R. 35.10(1); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Gottschalk*, 729 N.W.2d 812, 815 (Iowa 2007).  The commission's findings and recommendations are given respectful consideration, but we are not bound by them.  *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Isaacson*, 750 N.W.2d 104, 106 (Iowa 2008).  The board has the burden of proving attorney misconduct by a convincing preponderance of the evidence.

---

[1]The Iowa Rules of Professional Conduct became effective on July 1, 2005, replacing the Iowa Code of Professional Responsibility for Lawyers.  The Iowa Rules of Professional Conduct are sometimes referred to in this opinion as "rule" or "rules."  The provisions of the Iowa Code of Professional Conduct for Lawyers are sometimes referred to in this opinion as "Code" or "DR __–___."

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Conrad*, 723 N.W.2d 791, 792 (Iowa 2006).

> "This burden is less than proof beyond a reasonable doubt, but more than the preponderance standard required in the usual civil case. Once misconduct is proven, we 'may impose a lesser or greater sanction than the discipline recommended by the grievance commission.' "

*Id.* (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lett*, 674 N.W.2d 139, 142 (Iowa 2004)).

## II. Factual Background and Prior Proceedings.

**A. Prior Disciplinary Proceedings.** Earley has been practicing law in Iowa since 1993. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Earley*, 729 N.W.2d 437, 440 (Iowa 2007). On March 30, 2007, this court disciplined Earley by suspending his license for a period of not less than four months. *Id.* at 439. The violations that led to his suspension included neglecting cases, failing to deposit retainer fees to his trust account, failing to account for retainer fees paid to him by his clients, failing to return a file to a client, failing to cooperate with the board's inquiries, engaging in conduct reflecting poorly on his fitness to practice law, and engaging in misconduct that is prejudicial to the administration of justice. *Id.* at 442–43 (finding Earley violated DR 1–102(A)(1), (5), (6); DR 2–110(A)(2); DR 6–101(A)(3); DR 7–101(A)(1); and DR 9–102(A), (B)(3)). Although we concluded Earley's mishandling of retainers paid by clients "stemm[ed] from poor office organization and management," as opposed to deliberate misconduct and dishonesty, we determined his ethical infractions were serious enough to warrant a four-month suspension. *Id.* at 443.

**B. Current Disciplinary Proceedings.** On October 28, 2008, the board initiated this action by filing its complaint. In the complaint, the

board alleged Earley had violated his ethical duties in his representation of four clients, Hal Runner, Nicole Cleary, Michelle Fuller, and Mollie Marti. The claimed violations largely mirrored the charges in the earlier disciplinary action.

On February 5, 2009, Earley participated in a telephone conference during which he stated that he would send an answer to the complaint on that day and would admit to all allegations in the complaint. The parties also agreed at that time they would submit a joint recommendation as to the appropriate sanction. Earley did not send an answer, and a joint recommendation was never submitted to the commission. Subsequently, the board filed a motion to amend the complaint to include allegations regarding Earley's misappropriation of settlement money owed to his client, Mollie Marti. Earley did not respond to the motion, which was eventually granted by the commission.

At the hearing before the commission, evidence in support of the board's charges was admitted. Earley did not appear at the hearing, and therefore, the board's evidence was uncontested. In its findings and conclusions, the commission properly held that, under Iowa Court Rule 36.7, Earley's failure to file an answer resulted in his admission of the allegations in the amended complaint.

In its report to this court, the commission found the board had proven its charges and recommended revocation of Earley's license to practice law due to his misappropriation of client funds. Upon our de novo review of the record, we agree with the findings, conclusions, and recommended sanction of the commission, as detailed below.

### III. Factual Findings.

**A. Hal Runner Matter**. In March or April 2006, Earley began representing Hal Runner in a suit against Tamara Kriegel, who allegedly

had stolen money from Runner. On May 2, 2006, Earley sent a letter to Runner stating Earley expected to receive a portion of the stolen money, $3808.51, from Kriegel's attorney. This payment was subsequently made, and Earley retained $2500 for a retainer and paid the balance, $1308.51, to Runner. On August 3, 2006, Earley filed a petition for the remaining money against Kriegel on Runner's behalf. After August 2006, Runner tried to contact Earley between forty and fifty times, but Earley did not respond. On December 13, 2006, an order setting a trial date of July 11, 2007, was issued. Earley did not inform Runner of the trial date. Earley also failed to inform Runner that this court suspended his license to practice law in March 2007. Eventually, Runner heard of the suspension "through the grapevine" and hired another attorney to handle the matter. Earley never provided Runner with an accounting of his retainer fee nor did he turn over the case file as Runner requested.

**B. Nicole Cleary Matter.** In spring 2006, Earley began representation of Nicole Cleary in two matters. The first involved establishing child custody and obtaining child support. The second involved terminating the parental rights of her son's father. Cleary paid Earley retainer fees totaling $750. Despite Cleary's numerous attempts to contact Earley about the status of the first case, he did not respond. Cleary found out the status of her case by contacting opposing counsel. The case was eventually resolved in Cleary's favor, but Earley's failure to respond to her inquiries caused her stress and anxiety about whether she would retain custody of her child. With regard to the second case, Earley was to locate the father, as his whereabouts were not known. Earley failed to respond to his client's requests for information, and the second case remains unresolved. Earley did not provide Cleary with an accounting of the retainer fee, did not provide Cleary with her case file

despite her requests for the file, and did not inform Cleary of his license suspension.

**C. Michelle Lee Fuller Matter.** In 2002 Earley began representation of Michelle Lee Fuller in a dissolution-of-marriage and child-custody matter. Fuller paid a retainer fee of $1500. At a trial of the case on September 12, 2002, the parties reached a stipulation on all issues and read the settlement into the record. The trial judge ordered Earley to prepare the final decree, but he failed to do so. On numerous occasions, Fuller attempted to contact Earley, but he did not respond. Without the final decree, Fuller's case remained unresolved. On August 13, 2007, another attorney presented the final decree to the trial judge, thereby resolving the matter. Earley ignored Fuller's requests for her case file, did not provide her with an accounting of the retainer fee, and did not inform her of his license suspension.

**D. Mollie W. Marti Matter.** In 2004 Earley began representing Mollie W. Marti in a personal injury action. Marti was a law school friend of Earley. They did not have a formal retainer contract, but agreed that Earley would charge Marti on an hourly basis. Earley obtained a settlement of Marti's claim in the sum of $65,000, and on September 16, 2004, he paid $32,500 to Marti. Earley retained the balance of the settlement proceeds, advising Marti that he would use the money to pay insurance subrogation claims, costs and fees, and then remit the remainder to her. Marti expected to receive about $15,000 to $20,000 from the second half of the settlement. Despite Marti's multiple requests for information over the subsequent three years, Earley never responded, and Marti received no additional monies. Marti eventually contacted a subrogated liability insurer and discovered it had not been paid its subrogation claim. Marti did not determine whether the claim of her

health insurer was also unpaid. Nonetheless, since Earley did not respond to the complaint, the allegation that he did not pay the health insurer's subrogation claim was deemed admitted.

Marti finally reached Earley, who initially claimed he had paid the subrogation claims. When Marti informed him of her contact with the liability insurer, Earley admitted he had not paid the claims and the money was "gone," as he had used it for personal reasons. He promised to pay it back. In addition to misappropriating the $32,500, Earley failed to inform Marti that his license had been suspended.

**IV. Ethical Violations.**[2]

**A. Neglect.** Our rules regarding neglect and an attorney's obligation to advance and protect his clients' interests require " 'an attorney to attend to matters entrusted to his care and to do so in a reasonably timely manner.' " *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ramey*, 746 N.W.2d 50, 54 (Iowa 2008) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dunahoo*, 730 N.W.2d 202, 205 (Iowa 2007)); *Gottschalk*, 729 N.W.2d at 817–18. Neglect subjecting an attorney to discipline "involves 'indifference and a consistent failure to perform those obligations that a lawyer has assumed, or a conscious disregard for the responsibilities a lawyer owes to a client.' " *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kirlin*, 741 N.W.2d 813, 817 (Iowa 2007) (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Moorman*, 683 N.W.2d 549, 551 (Iowa 2004)). Earley neglected his clients' legal matters and failed to advance and protect his clients' interests in his representation of the four

---

[2]Earley's misconduct in the Runner and Cleary matters began in 2006, and therefore, the Rules apply in these cases. Earley's misconduct in the Fuller matter spans from 2002 to 2007, and therefore, both the Rules and the Code apply in that matter. Earley's misconduct in the Marti matter spans from 2004 to 2007, and therefore, the Rules and the Code apply in that matter.

individuals that are the subject of the board's complaint. In doing so, he violated rule 32:1.3 (failing to act with reasonable diligence and promptness in representing a client), rule 32:1.16(d) (failing to take steps to protect a client's interests upon termination of a matter), DR 6–101(A)(3) (neglecting a client's matter), and DR 7–101(A)(1) (intentionally failing to seek the lawful objectives of a client). *Ramey*, 746 N.W.2d at 54; *Earley*, 729 N.W.2d at 442.

**B. Failure to Return Files.** Earley engaged in misconduct when he refused to return client files upon request in the Runner, Cleary, and Fuller matters. This conduct violated rule 32:1.15(d) (failing to promptly deliver to the client any property that the client is entitled to receive), DR 1–102(A)(5) (engaging in conduct that is prejudicial to the administration of justice), DR 1–102(A)(6) (engaging in conduct that adversely reflects on the fitness to practice law), and DR 7–101(A)(1).[3] *Ramey*, 746 N.W.2d at 55–56; *Earley*, 729 N.W.2d at 442.

**C. Failure to Inform, Communicate, Account, and Return Property.** In all four matters, Earley engaged in misconduct when he failed to keep his clients informed about the status of their cases in violation of rule 32:1.3, rule 32:1.4(a)(3) (failing to keep the client informed about the status of a matter), DR 6–101(A)(3), and DR 7–101(A)(1). *Ramey*, 746 N.W.2d at 54–56; *Earley*, 729 N.W.2d at 442–43. He also engaged in misconduct when he failed to communicate with his clients after their repeated requests for information. This conduct violated rule 32:1.3, rule 32:1.4(a)(3), DR 6–101(A)(3), and DR 7–

---

[3]DR 9–102(B)(4) (a lawyer shall promptly deliver to the client property that a client is entitled to receive) also applies. *Gottschalk*, 729 N.W.2d at 820. Because Earley was not charged with violating this rule, we do not find that he violated it. The other ethical infractions we have found here are, nonetheless, sufficient for the discipline imposed.

101(A)(1). *Ramey*, 746 N.W.2d at 54–56; *Earley*, 729 N.W.2d at 442–43. In addition, Earley committed ethical infractions in all four matters when he failed to keep his clients informed with regard to money entrusted to him and to account for or return client money from retainer fees or settlement proceeds. These actions violated rule 32:1.4(a)(3), rule 32:1.4(a)(4) (failing to comply with reasonable requests for information), rule 32:1.15(d), rule 32:1.16(d), DR 1–102(A)(5), DR 1–102(A)(6), DR 6–101(A)(3), and DR 7–101(A)(1). *Ramey*, 746 N.W.2d at 55; *Earley*, 729 N.W.2d at 443. Finally, Earley engaged in misconduct when he failed to inform his clients of his suspension. This failure resulted in violations of rule 32:1.4(a)(3), rule 32:1.16(d), rule 32:8.4(d) (engaging in conduct that is prejudicial to the administration of justice), DR 1–102(A)(5), DR 1–102(A)(6), DR 6–101(A)(3), and DR 7–101(A)(1). *Ramey*, 746 N.W.2d at 54–55.

**D. Misappropriation and Dishonesty.** The most egregious misconduct committed by Earley concerns his handling of the settlement funds he held on behalf of his client, Marti. In response to Marti's inquiries, Earley falsely informed Marti that the subrogation claims had been paid. He then admitted that the claims had not been paid and stated the money was "gone," he had used it for personal reasons, and he would pay it back.

We agree with the commission's assessment that Earley's misrepresentations and misappropriation of client funds constituted dishonesty and theft in violation of rule 32:1.15(d); rule 32:1.16(d); rule 32:8.4(d); and DR 1–102(A)(4), (5), (6). *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Carroll*, 721 N.W.2d 788, 791–92 (Iowa 2006); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Bell*, 650 N.W.2d 648, 651–

52 (Iowa 2002); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Carr*, 588 N.W.2d 127, 129 (Iowa 1999).

### V. Sanction.

There is no standard sanction for a particular type of misconduct, and though prior cases can be instructive, we ultimately determine an appropriate sanction based on the particular circumstances of each case. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Plumb*, 589 N.W.2d 746, 748–49 (Iowa 1999). "In determining an appropriate sanction, we consider 'the nature of the violations, the need for deterrence, protection of the public, maintenance of the reputation of the Bar as a whole, and the violator's fitness to continue to practice law,' as well as any aggravating and mitigating circumstances." *Earley*, 729 N.W.2d at 443 (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Ramey*, 639 N.W.2d 243, 245 (Iowa 2002)); *accord Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marks*, 759 N.W.2d 328, 332 (Iowa 2009). The form and extent of the sanction " 'must be tailored to the specific facts and circumstances of each individual case.' " *Marks*, 759 N.W.2d at 332 (quoting *Comm. on Prof'l Ethics & Conduct v. Rogers*, 313 N.W.2d 535, 537 (Iowa 1981)). Significant distinguishing factors in the imposition of punishment center on " 'the existence of multiple instances of neglect, past disciplinary problems, and other companion violations.' " *Id.* (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lesyshen*, 712 N.W.2d 101, 106 (Iowa 2006)).

Because we conclude Earley's misappropriation of client funds warrants revocation of his license, we focus our discussion on the appropriate sanction for that violation. We have held on several occasions that an attorney's misappropriation of client funds is sufficiently egregious to warrant permanent license revocation. *See, e.g., Carroll*, 721 N.W.2d at 792; *Bell,* 650 N.W.2d at 655; *Carr*, 588 N.W.2d at

129–30. Unless the attorney " 'had a colorable future claim to the funds or did not take the funds for [the lawyer's] own use,' " revocation will be ordered. *Carroll*, 721 N.W.2d at 792 (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Anderson*, 687 N.W.2d 587, 590 (Iowa 2004)). As we explained in *Carr*,

> we have previously indicated conversion of client funds by lawyers will not be tolerated. We have also emphasized our obligation to protect the public from theft and deceit. The public, as well as the bar, needs to know disbarment will nearly always follow such wrongdoing.

588 N.W.2d at 129 (citations omitted).

In the instant action, Earley failed to appear at the hearing and only belatedly filed a statement in this court, asking that his license not be revoked. Although he now claims he did not misappropriate his client's funds, but merely failed to properly manage his law office, he has already forgone his opportunity to offer evidence contesting the board's charges. With respect to sanctions, Earley makes no assertion in his statement that he had a colorable claim to the $32,500 that disappeared from his trust account. Consequently, we are faced with a situation in which the aggravating nature of Earley's misconduct is extensive and the misappropriation of client monies intolerable.

We are aware that Earley's misappropriation of client funds in this case occurred in the same time frame as some of the misconduct for which he was previously disciplined. *See Earley*, 729 N.W.2d at 442. This court has held that when an attorney already under a disciplinary sanction is found to have committed additional violations during the same time as the sanctioned misconduct, we may choose not to impose additional discipline if we conclude that a more severe sanction would not have been imposed had the additional misconduct been known when

the initial discipline was ordered. *Ramey*, 746 N.W.2d at 56; *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Moorman*, 729 N.W.2d 801, 805–06 (Iowa 2007). This option is not appropriate in the present case due to the seriousness of Earley's misappropriation. Had we known of this misconduct during Earley's prior disciplinary action, we would certainly have imposed a more severe sanction than the four-month suspension previously ordered. Consequently, we conclude the appropriate sanction for Earley's egregious misconduct is license revocation.

## VI. Disposition.

Earley's license to practice law is revoked. Iowa Ct. R. 35.10(2). Earley shall provide all of the notifications required by Iowa Court Rule 35.22. Costs are taxed to Earley pursuant to Iowa Court Rule 35.26(1).

**LICENSE REVOKED.**