# IN THE SUPREME COURT OF IOWA

No. 10–0651

Filed December 30, 2010

**IOWA SUPREME COURT
ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**ANTHONY RAY JOHNSON,**

Respondent.

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

Grievance commission recommends a three-year suspension of attorney's license to practice law. **LICENSE SUSPENDED.**

Charles L. Harrington and David J. Grace, Des Moines, for complainant.

Anthony Ray Johnson, Ankeny, pro se.

**STREIT, Justice**.

The Iowa Supreme Court Attorney Disciplinary Board filed charges against the respondent, Anthony R. Johnson, alleging violations of the Iowa Rules of Professional Conduct relating to Johnson's representation of four separate clients. The alleged misconduct primarily concerns Johnson's failure to communicate with his clients and his neglect of their legal matters. Johnson failed to communicate with the board throughout the duration of the disciplinary process. Johnson did not file an answer to the board's complaint, and therefore, the complaint's allegations were deemed admitted at the misconduct hearing. Iowa Ct. R. 36.7. The commission found Johnson neglected client matters, failed to keep his clients informed or respond to their requests for information, failed to make necessary court filings or appear at court hearings, improperly presented an ex parte order to a court for signature, did not provide an accounting of fees or refund unearned attorney's fees, and failed to respond to the board's demand for information. The commission recommended Johnson be suspended for three years with no possibility of reinstatement and that, prior to reinstatement, Johnson be required to pay restitution, associate himself with a lawyer in good standing, maintain his continuing legal education (CLE) requirements, undergo a psychiatric and psychological evaluation, and complete a bar examination review class. Upon our review of the record, we suspend Johnson's license to practice law for three years and order that prior to reinstatement, Johnson must pay restitution, maintain CLE credits, and undergo a mental health evaluation.

## I. Background Facts and Prior Proceedings.

Johnson was admitted to practice in Iowa in 2007. Prior to his admission in Iowa, Johnson was suspended from practice in Illinois for

three months and ordered to pay $9,794.50 in restitution for receiving an excessive fee in a routine probate matter. In 2008, the Iowa Supreme Court Attorney Disciplinary Board privately admonished Johnson for charging an unreasonable fee, lack of diligence, and failure to keep a client informed in violation of rules 32:1.5, 32:1.3, and 32:1.4. The board explained that Johnson had procrastinated five months before filing a client's dissolution of marriage petition, filed an "embarrassingly sloppy" petition that referred to the parties' children in a childless marriage, and charged an excessive fee in light of the limited and poor quality work Johnson performed.

The board filed the instant three-count complaint against Johnson in September 2009. The complaint alleged Johnson, during the course of four separate representations, violated ethical rules by failing to take action on client matters, neglecting to attend court hearings, failing to communicate with his clients, ceasing representation without notification, failing to take proper steps to protect his clients' interests after ceasing representation, presenting an improper ex parte order to a court, and failing to cooperate with the board's investigation.

Johnson did not file an answer to the board's complaint. He did not answer the board's interrogatories, request for production of documents, or request for admissions. The hearing was scheduled for December 21, 2009. On December 15, 2009, Johnson's wife sent a letter informing the commission that Johnson would not be able to attend the scheduled hearing because he was currently incarcerated in the Polk County jail for failure to pay child support. Neither Johnson nor an attorney representing him requested a continuance.

Johnson did not attend the hearing, nor did he mount a defense or response to the complaint. The board's evidence is uncontested. The

board's complaint is deemed admitted pursuant to Iowa Court Rule 36.7 because Johnson failed to file an answer. The board also deemed the request for admissions, received into evidence as exhibit 1, admitted because Johnson failed to respond. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Moonen*, 706 N.W.2d 391, 395 (Iowa 2005) (accepting board's exhibits as uncontested when attorney failed to respond to complaint or request for admissions). Although the complaint was deemed admitted, the commission conducted a hearing, admitted exhibits one through eight, and heard the testimony of Robert Peters, a client of Johnson. After the hearing, the commission filed its findings of fact, conclusions of law, and recommendations, concluding the board had proven its allegations and recommending a three-year suspension along with other conditions for reinstatement.

## II. Standard of Review.

We review attorney disciplinary proceedings de novo. Iowa Ct. R. 35.10(1). "The commission's findings and recommendations are given respectful consideration, but we are not bound by them." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Earley*, 774 N.W.2d 301, 304 (2009). "The board has the burden of proving attorney misconduct by a convincing preponderance of the evidence." *Id.* "This burden is less than proof beyond a reasonable doubt, but more than the preponderance standard required in the usual civil case." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lett,* 674 N.W.2d 139, 142 (Iowa 2004). Once we find the misconduct has been proven, "we 'may impose a lesser or greater sanction than the discipline recommended by the grievance commission.' " *Id.* (quoting Iowa Ct. R. 35.10(1)).

### III. Ethical Violations.

**A. Neef Matter (Count I).** In May 2008, Jacqualine Neef contacted Johnson to discuss how to get her son's driver's license reinstated despite a $200,000 lien filed against her son. Johnson advised that bankruptcy would void the lien. Johnson agreed to file the son's bankruptcy petition in return for $800 plus $299 in court filing fees. Johnson informed Neef the process would take three to six months. After six weeks, Neef called Johnson to inquire about the proceeding; Johnson assured her things were progressing. On September 13, 2008, Neef observed that Johnson no longer appeared to work in his Newton, Iowa law office. Neef attempted to contact Johnson on numerous occasions, including visiting his former law office, calling repeatedly, and visiting Johnson's home. When Neef left a message on Johnson's cell phone informing him she was starting fraud charges and contacting the Iowa bar, Johnson called back and admitted he still had not filed the bankruptcy petition. Johnson never filed the petition and never returned any of Neef's fees.

The commission found violations of ethical rules 32:1.1[1], 32:1.3, 32:1.4, 32:1.16(d), and 32:8.4(a)[2], (c), and (d). Under ethical rules prohibiting neglect, attorneys must advance and protect their clients'

---

[1]We decline to address the commission's findings that Johnson violated rule 32:1.1, which requires an attorney to provide competent representation. To establish incompetence, the board is required to show the attorney: (1) did not possess the requisite legal knowledge and skill, or (2) did not make a competent analysis of the factual and legal elements of the matter. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hauser*, 782 N.W.2d 147, 153 (Iowa 2010). Although the board demonstrated serious neglect by Johnson, as discussed throughout this opinion, it did not address whether Johnson lacked the necessary legal knowledge and skill or failed to properly analyze the factual and legal elements of the matter.

[2]Because the board has proven other rule violations, we do not consider violation of rule 32:8.4(a), which provides that a lawyer shall not violate a disciplinary rule, as a separate violation. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ackerman*, 786 N.W.2d 495–496 n.3 (Iowa 2010).

interests and attend to matters entrusted to their care in a reasonably timely manner. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ackerman*, 786 N.W.2d 491, 495 (Iowa 2010). Johnson's neglect and failure to take any action, including failing to file a bankruptcy petition as agreed, violated rule 32:1.3 (failing to act with reasonable diligence). *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hauser*, 782 N.W.2d 147, 150–53 (Iowa 2010) (holding attorney violated rule 32:1.3 when he neglected client's dissolution of marriage proceeding by failing to make filings and by failing to appear at the scheduled trial); *Ackerman*, 786 N.W.2d at 495 (finding violation of rule 32:1.3 for dilatory handling of estates despite notices and inquiries from beneficiaries).

Johnson's failure to respond to Neef's phone calls and requests for information, failure to notify Neef of what progress had or had not been made on the case, and failure to provide notice of termination, contact information, return of paperwork, or a return of unearned fees violated rules 32:1.4 (duty to keep client informed) and 32:1.16(d) (duty to protect client's interests upon termination of representation). *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Carpenter*, 781 N.W.2d 263, 268 (Iowa 2010) (finding attorney's neglect of client's legal matters and failure to keep clients informed about their cases violated rules 32:1.3, 32:1.4, and 32:1.16(d)); *Earley*, 774 N.W.2d at 307–08 (holding attorney violated rules 32:1.4 and 32:1.16(d) when he "failed to keep his clients informed about the status of their cases," "failed to communicate with his clients after their repeated requests for information," and "failed to . . . account for or return client money from retainer fees"). Johnson also violated rule 32:8.4(c) (duty not to engage in dishonesty, fraud, deceit, or misrepresentation) because he told Neef things were progressing when he had not even filed the bankruptcy petition, assured Neef he would file

right away when reached by her, and once again failed to file. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wagner*, 768 N.W.2d 279, 286–87 (Iowa 2009) (holding repeated claims by attorney to client that documents were forthcoming constituted misrepresentations in violation of rule 32:8.4(c) when the documents were not actually ready).

We reject the commission's recommendation to find Johnson violated rule 32:8.4(d) (duty not to engage in conduct prejudicial to the administration of justice). Because Johnson never filed for bankruptcy, the board has not demonstrated how his conduct was prejudicial to the administration of justice. Acts are prejudicial to the administration of justice only when they " 'have hampered the "efficient and proper operation of the courts or of ancillary systems upon which the courts rely." ' " *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 768 (Iowa 2010) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Howe*, 706 N.W.2d 360, 373 (Iowa 2005)).

**B. Peters Matter (Count II).** Robert Peters retained Johnson to represent him in a divorce and child custody proceeding brought by his wife. Peters testified at Johnson's disciplinary hearing. Peters paid Johnson a $2000 retainer fee, and in total, Peters paid Johnson $10,900, nearly one-third of his yearly salary. Peters emptied his 401(k) account so that he would be able to afford to hire Johnson. Johnson stopped by Peters' work bi-weekly and collected $500 payments from Peters. Despite Peters' requests, Johnson failed to provide Peters with an itemized billing and complete receipts for payments.

One of the matters at issue in Peters' representation was custody of his three children. Peters explained in his complaint to the board that he hired Johnson because he wanted to ensure he had at least partial custody of his children.

During the representation, Johnson handwrote into a temporary order that "[t]he parties shall share physical custody approximately equally until said hearing" and then presented the order ex parte to the court, which the court entered. Prior to the order, Peters' wife had custody of the children. Two days later, opposing counsel filed a motion seeking to set aside the handwritten portion of the order and asserting Johnson had added the sentence without opposing counsel's or Peters' wife's knowledge or consent.

Johnson failed to attend a status conference to set Peters' child support payments scheduled for April 27, 2009, and then failed to attend the subsequently rescheduled status conference on May 4, 2009. Johnson instructed Peters the status conferences were only for attorneys, but Peters went to the courthouse during the rescheduled status conference. When Johnson failed to appear, the court made numerous attempts to contact Johnson; however, the court deemed it was "not appropriate to continue this matter any longer," and set child support payments. Peters testified that at this hearing, the judge set child support at forty-nine percent of Peters' income before taxes and insurance. Peters was left with only $250 per month to pay his bills. Peters also stated that almost everything in the divorce decree was in favor of his ex-wife.

After Johnson failed to attend the status conferences, Peters attempted to locate Johnson by calling him; going to Johnson's law office, which was empty; and going to his personal residence, where Peters was informed by neighbors that Johnson had moved. Peters testified he had not heard from Johnson at the time of the hearing.

Peters hired another attorney, whom he paid $2000, to try and fix the damage done by Johnson. This attorney was unable to contact

Johnson and could not obtain Peters' client files. Johnson did not reimburse any portion of the fee Peters paid. Peters spent an additional $200 on copies of checks and files to present to the board.

Peters testified to the precise work Johnson did before neglecting Peters' case: Johnson defended Peters in a domestic abuse petition in which Peters' ex-wife falsely claimed there was not an ongoing divorce proceeding, Johnson filed Peters' response to his ex-wife's petition for dissolution of marriage, and Johnson submitted the improper ex parte order. Peters testified Johnson had told him the fees to that point were $4000. Peters' ex-wife told Peters her fees at that point were only $500. After the point at which Johnson stopped performing work, Peters paid Johnson an additional $6900 upon request.

The commission found Johnson violated rules 32:1.1, 32:1.3, 32:1.4, 32:1.16(d), 32:3.2, 32:3.3(d), 32:3.5(b), 32:8.1(b), and 32:8.4(a), (c), and (d). Johnson's neglect of Peters' case, including his failure to appear for status conferences and respond to court inquiries, which resulted in what Peters perceived as unfavorable court decisions, violated rules 32:1.3 (failing to act with reasonable diligence) and 32:3.2 (duty to expedite litigation). *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hoglan*, 781 N.W.2d 279, 284 (finding attorney's neglect and failure to prosecute cases violated rules 32:1.3 and 32:3.2); *Ackerman*, 786 N.W.2d at 495. Johnson's failure to respond to Peters' phone calls, keep Peters informed, provide notice of termination, provide updated contact information, return paperwork and files, provide an accounting of fees, and return unearned fees violated rules 32:1.4 (duty to keep client informed) and 32:1.16(d) (duty to protect client's interests upon termination of representation). *See Carpenter*, 781 N.W.2d at 268; *Earley*, 774 N.W.2d at 307–08.

Johnson also committed a serious ethical violation when he handwrote a sentence that had not been agreed to by opposing counsel or the opposing party into an order and presented it ex parte to the court. This behavior violated rules 32:3.3(d) (duty of candor with tribunal and duty, in an ex parte proceeding, to notify tribunal of all material facts) and 32:3.5(b) (lawyer shall not communicate ex parte with judge during proceeding unless authorized). Johnson's behavior violated rule 32:8.4(c) (duty not to engage in dishonesty, fraud, deceit, or misrepresentation) because Johnson allowed the court to believe the opposing party had agreed to the handwritten sentence. Johnson also violated rule 32:8.4(d) (duty not to engage in conduct prejudicial to the administration of justice). Johnson's behavior hampered the " ' "efficient and proper operation of the courts" ' " because he induced the court to enter an order under false pretenses and the court then had to entertain opposing counsel's motion to strike the order. *Templeton*, 784 N.W.2d at 768 (quoting *Howe*, 706 N.W.2d at 373).

Lastly, Johnson violated rule 32:8.1(b) (duty to respond in disciplinary actions) by failing to respond when Peters filed a complaint. *Carpenter*, 781 N.W.2d at 269.

**C. Miller and Steibel Matters (Count III).** Johnson represented Craig Miller and Nadine Steibel in their respective bankruptcy proceedings. Because Johnson failed to file all of Miller's necessary bankruptcy documents, the bankruptcy trustee moved to dismiss Miller's petition. Johnson did not file the missing information or respond to the motion to dismiss. Miller was unable to contact Johnson despite repeated phone calls and trips to Johnson's office. Miller personally brought the missing information to the trustee and the trustee withdrew his motion to dismiss.

Johnson similarly neglected his client Steibel in her bankruptcy proceeding. Steibel paid Johnson $1500. Johnson filed Steibel's bankruptcy petition and then stopped filing the necessary paperwork. Steibel had difficulty contacting Johnson despite repeated calls and visits to his residence and office. On one occasion, she was able to catch him at his office. She demanded her bankruptcy files be returned to her, but Johnson stated the files were at his home and that he had to go home to get them. He never returned the files. Steibel took an active role in her case to ensure her proceeding continued and she was discharged from bankruptcy.

Steibel personally filed a motion to withdraw Johnson as counsel. The trustee filed a motion to examine fees alleging that Miller did not receive a quid pro quo exchange for the amount of fees paid to Johnson. The bankruptcy court set a hearing about Johnson's representation and issued an order requiring Johnson to appear. The notice stated: "SPECIFIC NOTICE TO ATTORNEY OF RECORD FOR DEBTOR: Attorney Tony R. Johnson shall appear at the hearing . . . ." Johnson failed to appear. During the hearing, the trustee testified:

> [O]ur office has had tremendous issues with [Johnson]. He doesn't return phone calls or any written correspondence in this case, information requested regarding Mrs. Steibel's case, and in a previous case . . . .
>
> . . . .
>
> Basically this comes before the Court because the United States Trustee's concerned.

The trustee detailed the issue of unearned fees in Miller's and Steibel's cases. The bankruptcy court ordered Johnson to refund $300 in attorney fees to Miller and $750 in fees to Steibel.

The commission found Johnson violated ethical rules 32:1.1, 32:1.3, 32:1.4, 32:1.16(d), 32:3.2, and 32:8.4(a), (c), and (d). Johnson's

neglect of Miller's and Steibel's bankruptcy matters, including his failure to make necessary filings, violated rules 32:1.3 (failing to act with reasonable diligence) and 32:3.2 (duty to expedite litigation). *See Hoglan,* 781 N.W.2d at 284; *Ackerman,* 786 N.W.2d at 495. Johnson's failure to keep Miller and Steibel informed, return their phone calls, provide information upon request, provide updated contact information, provide notice of termination of representation, return files, and refund unearned fees violated rules 32:1.4 (duty to keep client informed) and 32:1.16(d) (duty to protect client's interest upon termination). *See Carpenter,* 781 N.W.2d at 268; *Earley,* 774 N.W.2d at 307–08.

Johnson also violated rule 32:8.4(d) (duty not to engage in conduct prejudicial to the administration of justice). Johnson's behavior hampered the " ' "efficient and proper operation of the courts" ' " because he failed to file necessary paperwork in the bankruptcy cases. Johnson's neglect caused the trustee to file a motion to dismiss Miller's case and led to a bankruptcy court hearing about Johnson's general failure to provide representation, a hearing which Johnson failed to attend despite being specifically ordered to do so. *Templeton,* 784 N.W.2d at 768 (quoting *Howe,* 706 N.W.2d at 373); *see also Ackerman,* 786 N.W.2d at 496 (finding conduct prejudicial to the administration of justice, in violation of rule 32:8.4(d), where lawyer's dilatory conduct resulted in delinquency notices and intervention by specially appointed judge).

We do not find there is enough evidence to determine whether Johnson violated rule 32:8.4(c) (duty not to engage in dishonesty, fraud, deceit, or misrepresentation). The commission did not point to any specific misrepresentations or dishonesty engaged in by Johnson in his representation of Miller and Steibel.

**IV. Sanction.**

The commission recommended Johnson be suspended with no possibility of reinstatement for three years. It also recommended that prior to reinstatement, Johnson be required to: (1) provide proof that he made restitution to Neef, Peters, Steibel, and Miller; (2) provide proof that he will be supervised by an Iowa lawyer in good standing for two years; (3) provide proof he has maintained his continuing legal education (CLE) requirements; (4) complete and produce a comprehensive psychiatric and psychological examination providing proof of his mental and physical ability to practice law; and (5) complete a bar examination review class.

" 'There is no standard sanction for a particular type of misconduct, and though prior cases can be instructive, we ultimately determine an appropriate sanction based on the particular circumstances of each case.' " *Ackerman,* 786 N.W.2d at 497 (quoting *Earley,* 774 N.W.2d at 308). "Where neglect is compounded by other serious offenses, . . . this court has suspended the license of the offending attorney for substantial periods of time." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Joy,* 728 N.W.2d 806, 815 (Iowa 2007).

In tailoring an appropriate sanction, we look to " 'the nature of the violations, the need for deterrence, protection of the public, maintenance of the reputation of the Bar as a whole, and the violator's fitness to continue to practice law.' " *Ackerman,* 786 N.W.2d at 497 (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Ramey,* 639 N.W.2d 243, 245 (Iowa 2002)). We examine particular mitigating or aggravating factors, including " 'the existence of multiple instances of neglect, past disciplinary problems, and other companion violations.' " *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marks,* 759 N.W.2d 328, 332 (Iowa 2009)

(quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lesyshen*, 712 N.W.2d 101, 106 (Iowa 2006)).

Johnson neglected his clients' matters and failed to communicate with his clients. "When multiple instances of neglect are involved and combine with other violations or cause significant harm to the clients, we have imposed a longer period of suspension." *Carpenter,* 781 N.W.2d at 270. In *Iowa Supreme Court Attorney Disciplinary Board v. Van Beek*, we imposed a two-year suspension for neglect, forgery, misrepresentation, and failure to deposit unearned clients fees into a trust account. 757 N.W.2d 639, 643–44 (Iowa 2008). In *Iowa Supreme Court Attorney Disciplinary Board v. Sotak,* we imposed a two-year suspension for neglect leading to dismissal, misrepresentations made to clients, failure to meet court deadlines, and failure to promptly relay settlement funds to a client. 706 N.W.2d 385, 389–91 (Iowa 2005). And in *Iowa Supreme Court Board of Professional Ethics & Conduct v. D'Angelo*, we imposed a three-year suspension for neglect, acceptance of fees without court authorization, misrepresentation to clients, disregard of court orders, and failure to respond to ethics complaints. 619 N.W.2d 333, 337–39 (Iowa 2000).

Johnson's neglect of cases and clients are aggravated by his prior discipline. *See Wagner,* 768 N.W.2d at 288. Johnson was previously suspended in 2003 in Illinois for charging an excessive fee. Johnson was privately admonished in 2008 in Iowa for charging an unreasonable fee, acting with a lack of diligence, and failing to keep the client informed of the status of her case. Clearly, Johnson has a pattern of charging clients excessive fees or neglecting cases and failing to return unearned portions of fees. Johnson has not presented any mitigating factors.

Johnson was admitted to practice in Iowa in 2007, and has demonstrated in a short period of time a pattern of repeated callousness and indifference to his client's matters. He continually failed to communicate with his clients, in each case left them without counsel during the course of their legal proceedings, and routinely failed to return unearned fees. He committed ethical violations in his dealings with the tribunal during Peters' divorce proceeding and has refused to cooperate with this ethics investigation.

The commission recommends that we suspend Johnson for three years with no possibility of reinstatement. We agree the severe sanction of a three-year suspension is warranted. When neglect of clients also involved numerous other violations, the court has entered severe sanctions. In *D'Angelo*, this court imposed a three-year suspension for an attorney's neglect, acceptance of fees without court authorization, misrepresentation to clients, disregard of court orders, and failure to respond to ethics complaints. *D'Angelo*, 619 N.W.2d at 337–39. In *Carpenter*, this court barred an attorney licensed in another state from practicing in Iowa for two years, after taking into account the mitigating factor of depression, for neglecting and failing to communicate with clients, committing trust account violations, failing to respond to board inquiries (although unlike Johnson, he eventually did respond and entered into stipulated facts), and being convicted of traffic offenses. *Carpenter*, 781 N.W.2d at 268–72.

Here, Johnson repeatedly failed to keep his clients informed, neglected their court proceedings, failed to make necessary court filings, and failed to return client files or unearned fees. He also submitted an ex parte order to the court, to which opposing counsel had not agreed. Johnson has not responded in any way to the board, except for a letter

written by his wife claiming he was in jail during his hearing. Further, Johnson has a history of overcharging clients, resulting in a suspension in Illinois in 2003 and a private admonishment in Iowa in 2008. Therefore, we agree a three-year suspension is warranted.

The commission also recommended Johnson meet certain requirements before readmission to the bar. The commission recommended Johnson be required to provide proof of restitution to four clients. We agree with the commission's recommendation. Johnson must provide proof that he complied with the bankruptcy court orders to return $750 to Steibel and $350 to Miller. The commission did not specify an amount for Johnson to return to Neef and Peters, stating that "[d]ue to the lack of response by Mr. Johnson, the Division was unable to determine whether or not he should be allowed to retain any fees paid by Ms. Neef and Mr. Peters." We hold that a convincing preponderance of the evidence supports the determination that Johnson must return $1099 to Neef and $6900 to Peters. Neef explained in a letter that she had paid $800 in attorney's fees and $299 in court costs. Johnson never took the initial step of even filing the bankruptcy petition. Peters testified that Johnson told him the work he had completed prior to his neglect of the case was worth $4000. Because Peters had paid Johnson a total of $10,900, he is owed a return of $6900. Unlike the situation in *Carpenter*, the board presented evidence of the amount of unearned fees through client testimony. *See Carpenter*, 781 N.W.2d at 271–72 (holding the commission's recommendation that the attorney be ordered to refund his clients' funds could not be adopted because the stipulation failed to detail the amount of such funds and no witness testimony or evidence was taken on the matter).

The commission also recommended Johnson be readmitted only if he is supervised by an Iowa lawyer in good standing for two years. The

court does not have the ability to order this condition for readmission because " 'neither the court nor the bar has effective machinery in place for . . . supervision.' " *Lickiss*, 786 N.W.2d at 871–72 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kirlin*, 741 N.W.2d 813, 819 (Iowa 2007)). Therefore, we reject this requirement.

The commission also recommended Johnson provide proof that he has maintained his CLE credits and taken a bar examination course. We agree and adopt the recommendation that Johnson provide proof he has maintained CLE credits. Johnson's wholesale abandonment of his clients and—apparently—of his practice suggests a need to stay abreast of legal developments prior to readmission. We find the requirement that Johnson take a bar examination review course to be redundant and do not adopt that recommendation.

Lastly, the commission recommended Johnson provide proof of a psychological and psychiatric evaluation. We agree that such evaluation is necessary given Johnson's apparent total neglect of all of his ongoing matters and his failure to even respond to board inquiries. *See Lickiss*, 786 N.W.2d at 871.

**V. Conclusion.**

Because Johnson has violated ethical rules by severely neglecting four client matters, failing to respond to clients' inquiries for information, presenting an ex parte order to a court under false pretenses, failing to account for and return unearned fees, and failing to respond to the board and commission, we suspend Johnson's license to practice law with no possibility of reinstatement for three years. This suspension shall apply to all facets of the practice of law as provided in Iowa Court Rule 35.12(3) and requires notification of clients as required by Iowa Court Rule 35.22. Prior to reinstatement, Johnson must provide proof that he has maintained CLE credits during his suspension, an evaluation from a

licensed health care professional verifying his fitness to practice law, and proof that he has made restitution of unearned fees to clients in the following amounts: (1) $750 to Steibel as ordered by the bankruptcy court, (2) $300 to Miller as ordered by the bankruptcy court, (3) $1099 to Neef, and (4) $6900 to Peters. We tax the costs of this action to Johnson pursuant to Iowa Court Rule 35.26(1). Reinstatement shall not be ordered until all costs are paid. Iowa Ct. R. 35.26(3).

**LICENSE SUSPENDED.**