# IN THE SUPREME COURT OF IOWA

No. 11–1570

Filed January 13, 2012

**IOWA SUPREME COURT ATTORNEY
DISCIPLINARY BOARD,**

Complainant,

vs.

**MATTHEW WARREN CUNNINGHAM,**

Respondent.

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

Grievance Commission reports respondent committed ethical misconduct and recommends that attorney be suspended from the practice of law for three years. **LICENSE SUSPENDED.**

Charles L. Harrington and Teresa A. Vens, Des Moines, for complainant.

Matthew Warren Cunningham, pro se.

**ZAGER, Justice**.

This matter comes before us on the report of a division of the Grievance Commission of the Supreme Court of Iowa. *See* Iowa Ct. R. 35.10(1). The Iowa Supreme Court Attorney Disciplinary Board filed a complaint against Matthew W. Cunningham. The complaint alleged misconduct arising out of Cunningham's representation of two different clients involving divorce and bankruptcy matters. The Board alleged multiple violations related to neglect, misrepresentation, conduct prejudicial to the administration of justice, and failure to properly withdraw from representation. Cunningham failed to respond to these allegations and resulting proceedings in any way. The commission found Cunningham violated several Iowa Rules of Professional Responsibility and recommended we suspend his license with no possibility of reinstatement for three years. The commission also recommended Cunningham be required to undergo a mental health evaluation and present evidence of his fitness to practice law prior to reinstatement. Upon our de novo review, we find Cunningham violated numerous provisions of the Iowa Rules of Professional Responsibility and suspend his license to practice law for eighteen months. We also order that prior to reinstatement, Cunningham must complete a mental health evaluation and present evidence of his fitness to practice law.

## I. Background Facts and Prior Proceedings.

Cunningham was admitted to the Iowa bar in 2001. He leased office space in downtown Des Moines from another attorney, Pamela Vandel. At some point, Cunningham and Andrew Hope, another attorney who leased office space from Vandel, formed a partnership. In early

2008, Cunningham began to have problems.[1] According to Vandel's testimony, Hope called her to assist him in taking over some of Cunningham's cases because Cunningham had "just left" his practice, and "[Hope] didn't think [Cunningham] could practice law."

After Cunningham left, Vandel, Hope, and another attorney took over Cunningham's cases, with Vandel taking over eight or nine bankruptcy cases and three personal injury cases. Hope met with the rest of Cunningham's clients in an effort to salvage their cases. In at least one case, Hope filed a motion to withdraw on Cunningham's behalf. Shortly before the complaints that form the basis of this action were brought by the Board, Cunningham received a private reprimand for failing to inform a client of a withdrawal from representation and failing to deliver the client's file to him. In late 2008 and early 2009, Cunningham twice failed to respond to the Board's notices, and his license was temporarily suspended by this court on January 7, 2009, and May 14, 2009. These temporary suspensions remain in effect.

## II. Standard of Review.

Attorney disciplinary proceedings are reviewed de novo. Iowa Ct. R. 35.10(1); *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Johnson*, 792 N.W.2d 674, 677 (Iowa 2010). We give the grievance commission's factual findings respectful consideration, but they are not binding on us. *Johnson*, 792 N.W.2d at 677. The Board must prove misconduct by a convincing preponderance of the evidence. *Id.* This burden is more than the standard required in a usual civil case, but less than proof beyond a reasonable doubt. *Id.* If we find misconduct has been proven by a

---

[1]In their testimony before the commission, Vandel and a former client, Mary Walker, speculated that Cunningham's sudden departure was due to a mental problem, but there is no additional evidence in the record of Cunningham's mental state.

convincing preponderance of the evidence, "we may impose a lesser or greater sanction than the discipline recommended by the grievance commission." *Id.* (citation and internal quotation marks omitted).

### III. Findings of Fact.

The Board filed a complaint against Cunningham on June 8, 2011. Cunningham did not file an answer, and the Board's motion to invoke Iowa Court Rule 36.7 was granted on August 9, 2011. Under that rule, the Board's allegations are deemed admitted. Iowa Ct. R. 36.7; *see also Johnson*, 792 N.W.2d at 677. Based on the admitted allegations, and upon our de novo review of the record, we find the following facts.

**A. Count I: Mary K. Walker Matter.** In late 2007, Mary Walker retained Cunningham to assist her with her divorce from her husband, Brett Walker. Cunningham filed Walker's petition for dissolution of marriage on November 1, 2007. On November 21, Brett's attorney, R.J. Hudson, II, sent interrogatories and a request for production of documents to Cunningham. Cunningham did not forward these documents to Walker. On January 2, 2008, as part of a good-faith effort to resolve the discovery dispute, Hudson wrote a letter to Cunningham demanding responses to the requested discovery by January 13, 2008. Hudson did not receive any response from Cunningham and, on February 4, filed a motion to compel. A hearing on the motion was scheduled for February 26.

On February 5, Cunningham sent Walker a letter and forwarded a notice of scheduling conference, along with the interrogatories and request for production of documents.[2] Walker called Cunningham with questions regarding the discovery documents, and he told her to fill them

---

[2]The scheduling conference was also set for February 26. In the February 5 letter, Cunningham told Walker she did not need to attend the conference.

out briefly and then she could come into his office later and "we would fill it out in detail at some point in time." Walker also stated Cunningham told her "that [she] just needed to return it to him with some sort of answer on it."

On February 26, the court granted Hudson's motion to compel and ordered Walker to "serve all outstanding discovery by 3-11-08 or appear on 3-18-08 at 9:30 A.M. for imposition of sanctions." On March 5, Cunningham wrote Walker, informing her of the order and the March 11 deadline, as well as the possible imposition of sanctions. Walker briefly hand wrote her answers to the interrogatories and provided Cunningham a handwritten, numbered list in response to the request for production of documents. The discovery documents were notarized in Cunningham's office on March 7 and forwarded to Hudson on March 11. Walker never heard from Cunningham again.

The court held a hearing on the motion for sanctions on March 18. Cunningham failed to appear and did not inform Walker that she needed to appear. The court imposed sanctions on Walker by awarding $500 in attorney fees payable to her husband. Cunningham never told Walker he was not going to represent her at the sanctions hearing and did not tell her that she needed to attend the hearing. Walker did not learn that sanctions had been imposed until she was served by the sheriff. Walker did not learn of Cunningham's intent to withdraw until May 6, when Andrew Hope, Cunningham's partner, filed a motion to withdraw, stating Cunningham had "become incapacitated due to health reasons and [was] unable to proceed in this matter as counsel." Ultimately, Walker was forced to sell some furniture and other personal property in order to retain another attorney to complete her divorce action. Walker also had temporary custody of her minor child, but due to the delay in her divorce

proceedings, she did not receive an award of temporary child support for six months. She eventually received an award of temporary child support of $725 per month.

**B. Count II: Sheila K. McDowell Matter.** In 2006, Sheila McDowell (known then as Sheila Sammons) and her husband Bruce Sammons decided to file for divorce. Due to Bruce's medical issues, the couple had built up a large amount of credit card debt and wanted to file for bankruptcy prior to getting divorced. Sheila's divorce attorney referred them to Cunningham. On July 11, Cunningham sent Sheila a letter stating that he would begin reviewing the couple's financial information to see if they would qualify for a Chapter 7 liquidation bankruptcy. At that time, he also suggested the couple take a credit counseling course that would be required before they could file bankruptcy. Sheila wanted to remarry after the divorce, but wanted to be sure that the debts from her first marriage were discharged before getting remarried. Sheila made this known to Cunningham. On August 23, 2006, Sheila's divorce attorney copied Cunningham on a letter to Bruce Sammons, which stated, "I will do nothing with regard to pursuing this [divorce] case until such time as the bankruptcy is processed. I understand that Matt Cunningham is representing you, and I am sending him a copy of this letter as well as one to Sheila."

On September 26, Cunningham sent Sheila a fee agreement for a joint bankruptcy, as well as the forms the couple would be required to fill out before filing. Bruce and Sheila paid Cunningham $299 for the filing fee and a $1200 up-front fee to file a joint bankruptcy for them and returned the completed bankruptcy schedules to him. The couple qualified for a Chapter 7 liquidation bankruptcy, and over the next few months, Cunningham told Sheila that he had filed her petition and that

a first meeting of creditors had been scheduled. Sheila scheduled time off work to attend the first meeting of creditors three different times, but each time Cunningham informed her the day before the meeting that it had been cancelled.

The delays in the bankruptcy proceeding also delayed Bruce and Sheila's divorce. The pretrial conference for the divorce had to be postponed to March 19, 2007, so that the bankruptcy could be completed. Cunningham reviewed and approved the proposed premarital agreement between Sheila and her new husband.[3] On April 2, 2007, Sheila and Bruce's divorce was finalized. The divorce decree noted:

> The Court is informed that the parties have filed a petition in bankruptcy with the Federal Bankruptcy Court for the Southern District of Iowa. No resolution of such Bankruptcy has occurred but such filing does materially affect the property division of the parties.

Sheila remarried after Cunningham again assured her that the bankruptcy would take care of everything and that her new husband would not be liable for the debts from her previous marriage.

Months later, Sheila was contacted by Pamela Vandel. Vandel had agreed to take over several bankruptcy cases that Cunningham abandoned. Prior to contacting Sheila, Vandel noticed that all the money in the trust accounts was gone. She assumed that because the filing fee was gone, the bankruptcy petition had been filed. However, Vandel and Hope were unable to locate a bankruptcy petition, and a search of the bankruptcy court's database did not turn up any petition filed on behalf of Sheila or Bruce. At this point, Vandel contacted Sheila, informed her

---

[3]In March of 2008, Cunningham again told Sheila that he had filed the bankruptcy petition. Sheila's daughter was having difficulty with the Social Security Administration, and in order to verify that he had filed Sheila and Bruce's bankruptcy, Cunningham faxed a copy of their petition to Sheila as proof that he had filed the bankruptcy petition.

that Cunningham never filed the bankruptcy petition, and agreed to take over her case.

Sheila, however, was now remarried and was no longer eligible to file a Chapter 7 liquidation bankruptcy because of her and her new husband's combined income.[4]   Sheila was therefore forced to file a Chapter 13 reorganization bankruptcy.  Sheila's new husband's income had to be used to determine an appropriate level of monthly repayment. Under Chapter 13, Sheila had to make monthly payments, which had to be overseen by a bankruptcy trustee.  The bankruptcy process took several years, instead of a few months.  Vandel also testified that because she was forced to file for a Chapter 13 bankruptcy, Sheila was required to assume and repay more than $4000 of debt that would have been discharged under the Chapter 7 bankruptcy if it had been timely filed.  The filing fee Sheila and Bruce paid Cunningham has still not been returned, nor has the $1200 up-front fee.

**IV. Ethical Violations.**

**A. The Board's Complaint and the Findings of the Grievance Commission.**    In the complaint, the Board alleged Cunningham's conduct violated rules 32:1.3 ("A lawyer shall act with reasonable diligence and promptness in representing a client"), 32:1.4(a)(3) ("A lawyer shall . . . keep the client reasonably informed about the status of the matter"), 32:1.16(a)(2) (a lawyer "shall withdraw from the representation of a client if . . . the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client"), 32:1.16(d) (upon withdrawal, "a lawyer shall take steps to the extent reasonably practicable to protect a client's interests"), 32:3.2 ("A lawyer shall make

---

[4]Vandel also testified that she completed a Chapter 7 bankruptcy for Bruce, who, based on his income, was still eligible for Chapter 7 bankruptcy.

reasonable efforts to expedite litigation consistent with the interests of the client"), 32:3.4(c) ("A lawyer shall not . . . knowingly disobey an obligation under the rules of a tribunal"), 32:8.4(c) ("It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation"), and 32:8.4(d) ("It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice"). The commission found Cunningham violated rules 32:1.3, 32:1.4(a)(3), 32:1.16(a)(2), 32:1.16(d), 32:3.2, and 32:3.4(c) in his representation of Walker and rules 32:1.3, 32:1.16(d), 32:3.2, 32:8.4(c), and 32:8.4(d) in his representation of Sheila McDowell.

Even though Cunningham has not responded to these proceedings, we must still conduct a de novo review of the Board's allegations to ensure that the Board has proven each allegation of misconduct by a convincing preponderance of the evidence. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wagner*, 768 N.W.2d 279, 281–82 (Iowa 2009). We now address the alleged violations contained in each count of the complaint.

**B. Count I: Ethical Violations in the Walker Matter.** "Neglect subjecting an attorney to discipline involves indifference and a consistent failure to perform those obligations that a lawyer has assumed, or a conscious disregard for the responsibilities a lawyer owes to a client." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Earley*, 774 N.W.2d 301, 307 (Iowa 2009) (citation and internal quotation marks omitted). "Under ethical rules prohibiting neglect, attorneys must advance and protect their clients' interests and attend to matters entrusted to their care in a reasonably timely manner." *See Johnson*, 792 N.W.2d at 678. For over two months, Cunningham failed to provide Walker with the discovery requests. This delay resulted in the court granting opposing counsel's

motion to compel. Though Cunningham notified Walker of the motion to compel and of the possibility of a motion for sanctions, he failed to take any steps to ensure she properly completed the discovery requests in order to avoid sanctions. Instead, he simply mailed her handwritten responses to the interrogatories to opposing counsel, along with the handwritten list of documents Walker had prepared in response to the request for production of documents. Cunningham also failed to attend a hearing on the motion for sanctions but did not tell Walker that she needed to attend. He also failed to inform Walker that a $500 sanction had been ordered. This conduct falls below the standard required by rule 32:1.3, which demands reasonable promptness and diligence in representing a client.

Walker also testified that she attempted to contact Cunningham regarding the status of her divorce but was unable to reach him. While someone at his office told her that she would be contacted, she never was. Cunningham failed to keep Walker informed about the status of her divorce case and thereby violated rule 32:1.4(a)(3). *See Earley*, 774 N.W.2d at 307. Cunningham neglected Walker's legal matter and failed to advance or protect her legal interests in violation of our ethical rules.

Walker was not informed that Cunningham was withdrawing from her case until his law partner filed a motion to withdraw on Cunningham's behalf on May 6, 2008, nearly two months after the order for sanctions. Upon withdrawal, Cunningham failed to take any steps to safeguard Walker's interests or to return her files to her. This conduct clearly violates rule 32:1.16(d). *See Johnson*, 792 N.W.2d at 681; *see also Earley*, 774 N.W.2d at 307–08. Cunningham failed to appear at hearings and failed to participate in discovery in a timely manner. Failing to appear at hearings and participate in discovery does not

constitute a reasonable effort to expedite litigation and therefore violates rule 32:3.2. *See Johnson*, 792 N.W.2d at 679–80.

Rule 32:3.4(c) prohibits an attorney from "knowingly disobey[ing] an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists." On February 26, 2008, Cunningham was ordered to serve all outstanding discovery by March 11 or else appear at a hearing on the motion for sanctions on March 18. Cunningham failed to adequately respond to the discovery requests and failed to appear at the hearing, thereby violating an order of a tribunal. In order to violate rule 32:3.4(c), the attorney must have actual knowledge of the court order. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Joy,* 728 N.W.2d 806, 813 (Iowa 2007). On March 5, Cunningham wrote Walker a letter informing her of the need to complete discovery by March 11 and of the possible motion for sanctions on March 18. Cunningham clearly had knowledge of the court's order. Therefore, when he disobeyed it, he violated rule 32:3.4(c).

The alleged violation of rule 32:1.16(a)(2) poses a closer question. The rule requires an attorney to withdraw from representation when "the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client." Iowa R. Prof'l Conduct 32:1.16(a)(2). There is very little case law interpreting this rule or its predecessor, DR 2–110(B)(3). In *Hoglan*, we found a violation of this rule occurred when an attorney allowed several appeals to be dismissed for want of prosecution. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hoglan*, 781 N.W.2d 279, 282, 284 (Iowa 2010). Prior to his cases being dismissed, Hoglan requested several extensions, citing a "serious back problem." *Id.* at 282. We found a violation of rule 32:1.16(a)(2). *Id.* at 284.

The case at issue today is different. In finding Cunningham had violated rule 32:1.16(a)(2), the commission simply stated,

> Andrew Hope's motion stated Cunningham had "become incapacitated due to health reasons and is unable to proceed in this matter as counsel" on May 6, 2008. Cunningham did not terminate his representation of Ms. Walker prior to the Motion for Sanctions in March of 2008. Ms. Walker was prejudiced by Cunningham's failure to withdraw from representing her prior to that hearing.

A violation of rule 32:1.16(a)(2) requires more. The plain language of rule 32:1.16(a)(2) requires an attorney to withdraw if "the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client." To prove a violation of this rule, the Board would have to show that the attorney was suffering from a mental or physical condition and that the condition materially impaired the lawyer's ability to represent the client. The Board has not proven by a convincing preponderance of the evidence that Cunningham was suffering from such a condition prior to the motion to withdraw.

Hope's motion on Cunningham's behalf is evidence that Cunningham was suffering from a physical or mental condition that was impairing his ability to represent Walker on May 6, 2008. The commission relied on this motion to show Cunningham violated rule 32:1.16(a)(2) by not withdrawing as Walker's attorney prior to the hearing on the motion for sanctions in March of 2008. We disagree with this conclusion. The motion to withdraw indicates that Cunningham's ability to represent Walker was materially impaired by his mental or physical condition on May 6, but it does not indicate *when* Cunningham's ability to represent Walker first became materially impaired. While we agree that Cunningham provided inadequate representation to Walker in March of 2008, the statement found in the

motion to withdraw is insufficient to convince us that Cunningham's inadequacies at that time were due to a mental or physical impairment. The other evidence presented is also insufficient to lead to the conclusion that Cunningham was suffering from a mental condition that materially impaired his ability to represent clients. Vandel's testimony does not include the dates when she and Hope began to deal with the problems created by Cunningham's sudden departure. The private reprimand Cunningham received mentioned that Cunningham signed for the initial notice of complaint of May 10, 2008. That reprimand arose out of Cunningham's failure to properly withdraw from representation of another client. Though the reprimand cited "health reasons" as the justification for Cunningham's withdrawal in that case, there was again no indication as to when his health issues arose or how severe his health problems were. The reprimand is insufficient to show Cunningham represented Walker when he was suffering from a mental or physical condition that materially impaired his ability to represent her.

In order to find a violation of rule 32:1.16(a)(2), we must find, by a convincing preponderance of the evidence, that Cunningham was suffering from a mental or physical condition that materially impaired his ability to represent Walker and that he failed to withdraw at that time. On our de novo review, there is insufficient evidence to find a violation of rule 32:1.16(a)(2). Other than the motion to withdraw, the only evidence of Cunningham's mental or physical condition came from Walker and Vandel who testified at the grievance hearing.

The testimony offered is insufficient evidence to indicate a mental or physical condition materially impaired Cunningham's ability to represent clients prior to his withdrawal on May 6. While it is clear that something was impairing Cunningham's ability to adequately represent

Walker, it is not clear that the impairment was a mental or physical issue. The Board has not proven Cunningham violated rule 32:1.16(a)(2). However, we find Cunningham violated rules 32:1.3, 32:1.4(a)(3), 32:1.16(d), 32:3.2 and 32:3.4(c) in his representation of Walker.

**C. Count II: Ethical Violations in the McDowell Matter.** Cunningham told Sheila McDowell he was going to file a bankruptcy petition for her and her husband and never did. This conduct does not meet the standard of reasonable diligence and promptness, nor is it a reasonable effort to expedite litigation consistent with the interests of the client, and therefore, it violates rules 32:1.3 and 32:3.2. *Johnson*, 792 N.W.2d at 681. Cunningham stopped representing Sheila, but did not take any steps to safeguard her interests and never returned her filing fee or her up-front fee for the bankruptcy. This conduct violates rule 32:1.16(d). *Id.*; *see also Earley*, 774 N.W.2d at 307–08.

Cunningham told Sheila and her divorce attorney that he had filed the bankruptcy petition. He went so far as to provide Sheila with a copy of the petition to prove to her that he had filed the bankruptcy. Vandel testified that she could not find any record of a petition being filed in the bankruptcy court or in Cunningham's files. We find her testimony credible and conclude that Cunningham did not in fact file Sheila's petition as he claimed he did. In *Johnson*, we found an attorney engaged in dishonesty, fraud, deceit or misrepresentation when "he told [the client] things were progressing when he had not even filed the bankruptcy petition." 792 N.W.2d at 678. Cunningham's conduct here is misrepresentation and violates rule 32:8.4(c). *Id.*

Finally, we find Cunningham's conduct was prejudicial to the administration of justice in violation of rule 32:8.4(d). In interpreting rule 32:8.4(d), we have stated,

> [T]here is no typical form of conduct that prejudices the administration of justice, [but] actions that have commonly been held to violate this disciplinary rule have hampered the efficient and proper operation of the courts or of ancillary systems upon which the courts rely.

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 768 (Iowa 2010) (citation and internal quotation marks omitted); *see also Johnson*, 792 N.W.2d at 681. Simply failing to file a bankruptcy petition does not, in and of itself, hamper the operation of the courts. *Johnson*, 792 N.W.2d at 678. However, an attorney's dilatory conduct violates rule 32:8.4(d) when that conduct places additional burdens on the bankruptcy court and causes the trustee to expend greater amounts of time and energy than would otherwise have been required. *Id.* at 681. Cunningham's failure to file Sheila and Bruce's bankruptcy meant that, instead of filing a single, joint Chapter 7 bankruptcy, Bruce had to go through a separate Chapter 7 bankruptcy, and Sheila had to go through a separate Chapter 13 bankruptcy. This required a longer and more intensive period of judicial oversight than would have been necessary if Cunningham had timely filed Sheila and Bruce's petition. Moreover, Cunningham's failure to initiate the bankruptcy action caused significant delays in the state district court. In August of 2006, Sheila's divorce attorney wrote Cunningham a letter informing him that Bruce and Sheila's divorce would be delayed until the bankruptcy petition was filed. Due to Cunningham's dilatory conduct in connection with the filing of the petition, Bruce and Sheila were forced to reschedule proceedings connected to their divorce, which delayed their divorce for several

months. Cunningham's misrepresentation interfered with the effective and efficient administration of the bankruptcy court and the district court. This conduct hampered the efficient operation of the courts and the ancillary systems they rely on and therefore violated rule 32:8.4(d).

**V. Sanctions.**

The commission recommended that we suspend Cunningham's license with no possibility of reinstatement for three years. The commission also recommended that Cunningham be required to have a mental health evaluation and present evidence of his fitness to practice law prior to reinstatement. There is no standard sanction for a particular type of misconduct. *Id.* Though prior cases are instructive, the appropriate sanction must be based on the particular circumstances of each individual case. *Id.* at 681–82. In determining the appropriate sanction, we consider "the nature of the violations, the need for deterrence, protection of the public, maintenance of the reputation of the Bar as a whole, and the violator's fitness to continue to practice law." *Id.* at 682 (citation and internal quotation marks omitted).

In addition to the nature of the violations, we will also consider mitigating and aggravating factors. *Id.* Cunningham has not responded to these proceedings and therefore has not provided any mitigating factors. Aggravating factors include the existence of multiple instances of neglect, other companion violations, and past disciplinary problems. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Carpenter*, 781 N.W.2d 263, 270 (Iowa 2010); *see also Johnson*, 792 N.W.2d at 682. Failure to respond to and cooperate with the Board's investigation is also an aggravating factor. *Wagner*, 768 N.W.2d at 288.

Cunningham's violations stem from neglecting his clients, in effect abandoning them, without warning, in the middle of their cases. Client

neglect is a serious matter. *See, e.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lesyshen,* 712 N.W.2d 101, 106 (Iowa 2006) (comparing an attorney who neglects his clients to "a surgeon who, without transferring responsibility, drops his scalpel and abandons his patient in the course of an operation" (citation and internal quotation marks omitted)).

> The sanction for attorney misconduct involving neglect typically ranges from a public reprimand to a six-month suspension. The sanction imposed in a particular instance often depends upon whether there are multiple instances of neglect, other additional violations, or a history of past disciplinary problems.

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Fields,* 790 N.W.2d 791, 798 (Iowa 2010) (citation omitted); *see also Joy,* 728 N.W.2d at 815–16 ("Where neglect is compounded by other serious offenses, however, this court has suspended the license of the offending attorney for substantial periods of time.").

Neglect can lead to more severe sanctions when coupled with irregularities in handling client funds. In *Johnson,* for example, we suspended the attorney's license for three years for

> severely neglecting four client matters, failing to respond to clients' inquiries for information, presenting an ex parte order to a court under false pretenses, failing to account for and return unearned fees, and failing to respond to the board and commission.

792 N.W.2d at 684. While Vandel testified that all of Cunningham's clients' trust accounts were empty, the Board has not alleged any trust account violations, and therefore, we will not consider misappropriation of client funds as an aggravating factor in this case.

In *Carpenter,* we noted the typical range for neglect was a public reprimand to six months' suspension, but added, "When multiple instances of neglect are involved and combine with other violations or

cause significant harm to the clients, we have imposed a longer period of suspension." 781 N.W.2d at 270. We imposed a two-year suspension for "misconduct in seventeen client matters, including neglect, failure to communicate, and failure to safeguard his clients' interests upon termination of representation, in addition to his trust account violations and conviction for two traffic offenses." *Id.* at 271. While Cunningham has only been accused of misconduct in connection with two clients, as opposed to seventeen, his violations have resulted in significant harm. Cunningham's neglect caused Walker to pay a $500 sanction, to sell her furniture and other personal property to hire a different attorney, and to miss out on nearly $5000 in temporary child support. The harm to Sheila is equally great. Instead of a Chapter 7 bankruptcy, she was forced to go through a Chapter 13 bankruptcy, which required her to repay more than $4000 of debt and required substantial and lengthy supervision by the bankruptcy court.

In addition to causing harm to his clients, Cunningham has combined his neglect with misrepresentations to his clients and officers of the court, knowing that those misrepresentations would be relied on. He neglected to file Sheila's bankruptcy petition and then proceeded to tell her and her attorney that he had filed the petition. He also faxed a copy of the bankruptcy petition to Sheila's daughter in an effort to prove he had filed the petition when he had not. As a result of this neglect coupled with misrepresentation, Sheila and her new husband were forced to repay nearly $4000 more in debt than they would have been obligated to repay if Cunningham had done what he claimed to have done. This neglect, combined with misrepresentation, caused great harm to Cunningham's clients and favors a harsher suspension than six-months.

On the other hand, in *Lickiss*, we considered a three-month suspension appropriate for an attorney who "engaged in multiple instances of neglect in four probate matters such that he failed to properly advance his clients' interests[,] . . . took probate fees before obtaining the required court orders, and failed to respond to his clients' and the board's inquiries." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lickiss*, 786 N.W.2d 860, 868–69, 871 (Iowa 2010). That case presented mitigating factors, such as the attorney's mental health issues. *Id.* at 871. While it is possible Cunningham was suffering from mental health issues, he has not presented any evidence to that effect, and therefore, we do not consider it as a mitigating factor in this case.

A two-year suspension was appropriate where the attorney's "conduct consisted of multiple acts of making misrepresentations to the court, disregarding court orders, neglecting client matters, misrepresenting the status of matters to his clients, and failing to respond to the Board's inquiries." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Honken*, 688 N.W.2d 812, 820, 822 (Iowa 2004). However, in *Joy*, we imposed an eighteen-month suspension for an attorney who neglected four clients, failed to comply with court orders, made misrepresentations, failed to turn over client papers, and failed to cooperate with the Board's investigation. 728 N.W.2d at 812–15. We cited several cases in *Joy* which imposed suspensions ranging from one to three years for similar violations. *See id.* at 815–16 (citing a collection of cases). We again imposed an eighteen-month suspension on an attorney who made misrepresentations to his clients and the court in an effort to cover his neglect, committed companion violations, and failed to respond to the Board's inquires. *See Fields*, 790 N.W.2d at 798, 801. Cunningham committed similar violations. He neglected his clients,

failed to comply with a court order, failed to properly withdraw or turn over clients' files, and made misrepresentations that compounded the damage caused by his neglect.

While prior discipline can be an aggravating factor, we have held that if "[t]he prior admonishment occurred during the timeframe and related to a matter we are considering in this action, [then] it does not require us to increase the severity of the sanction." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wengert*, 790 N.W.2d 94, 103 (Iowa 2010). Cunningham's only prior discipline was a private admonishment that he received on November 24, 2008. The complaint in that case arose out of Cunningham's representation of a client in an action for wrongful termination from employment. The admonishment noted that,

> In 2008 [Cunningham] took "a leave of absence" for health reasons from [his] law practice, abandoning, among other things, the representation of the complainant. [Cunningham] failed to inform [the complainant] of [his] leave of absence or of [his] effective withdrawal from [the complainant's] case; neither did [he] promptly deliver his file to him.

The Board reminded Cunningham that, while health reasons were proper grounds for withdrawal under rule 32:1.16(a)(2), he still had certain responsibilities to his clients upon withdrawal from representation. The Board also noted in the admonishment that Cunningham initially failed to respond to the Board's complaint and that he "narrowly avoided a suspension by sending a belated response." Cunningham's only prior discipline involved neglect of client matters and occurred in the same timeframe as the violations before us in this case. Accordingly, we will not view Cunningham's prior discipline as an aggravating factor.

After reviewing the nature of all of Cunningham's violations and of the aggravating circumstances, we feel an eighteen-month suspension is appropriate. Cunningham neglected his clients and then compounded the damage by making misrepresentations to them. He has failed to turn over their files or to assist them in any way in dealing with his sudden withdrawal. In addition, his neglect has increased the burden on the courts and the ancillary systems on which they rely, and he has not cooperated with the Board's investigation. While we recognize that it is possible Cunningham's violations stem from mental illness, he has not presented any evidence that this is a mitigating circumstance. Since our considerations when imposing sanctions include the protection of the public and the attorney's fitness to practice law, we will also require that, prior to reinstatement, Cunningham provide an evaluation from a licensed health care professional verifying his fitness to practice law.

As a precondition for reinstatement, we can also require an attorney to provide proof that he has made "restitution to all persons and entities that have lost money as a result of his actions." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McCann*, 712 N.W.2d 89, 97 (Iowa 2006). Such a requirement is appropriate here. Prior to reinstatement, Cunningham must provide proof that he has repaid the $500 in sanctions that Mary Walker was forced to pay as a result of Cunningham's failure to comply with the court's motion to compel. Hope paid the filing fee for Sheila's Chapter 13 bankruptcy petition, and Vandel provided her legal services free of charge. However, due to Cunningham's neglect and misrepresentation, Sheila McDowell was forced to go through Chapter 13 bankruptcy where the amount of additional debt she was required to repay totaled $4000. Therefore, prior

to reinstatement, Cunningham must provide proof that he has repaid $4000 to Sheila McDowell.

There is one other issue we wish to address. Due to his failure to respond to the Board's initial complaints, Cunningham's license was temporarily suspended on January 7, 2009, and again on May 14. *See* Iowa Ct. R. 34.7(3). A suspension under rule 34.7(3) serves as both a disciplinary measure and a means of "prompt[ing] a response to the board's inquiries so the disciplinary action may proceed in a timely and informed fashion." *Lickiss*, 786 N.W.2d at 870. Cunningham has not responded to these proceedings, and because of this failure, the temporary suspension remains in effect. *See* Iowa Ct. R. 34.7. As we have previously noted,

> The coercive nature of the suspension is demonstrated by the fact that the length of the suspension under rule 34.7 is essentially up to the respondent. Once the attorney responds to the board's inquiries, the board is required to withdraw its certificate or provide an alternate basis for continuing the suspension, and upon the board's withdrawal of the certificate, the court must immediately reinstate the attorney's license to practice law.

*Lickiss*, 786 N.W.2d at 870 n.3 (citation and internal quotation marks omitted). Since Cunningham did not respond to the Board's inquires, the Board was not required to withdraw its certificate, and Cunningham's suspension remained in effect on this basis alone. Because the prior suspensions were for separate violations of rule 34.7, the period of temporary suspension cannot be considered as discipline for the ethical violations discussed in this opinion and therefore, cannot be considered as part of the eighteen-month suspension we now order. *See id.* at 870; *see also Fields*, 790 N.W.2d at 800. However, since this opinion concludes the present disciplinary action, there is no longer a

need to "prompt a response to the board's inquiries," and the temporary suspensions are accordingly dismissed. *Lickiss*, 786 N.W.2d at 870.

## VI. Disposition.

Cunningham committed numerous ethical violations involving neglect of client matters, misrepresentation, and conduct prejudicial to the administration of justice. These violations caused significant harm to his clients. He has not responded to the Board's complaints. We therefore suspend Cunningham's license to practice law with no possibility of reinstatement for eighteen months. This suspension shall apply to all facets of the practice of law as provided in Iowa Court Rule 35.12(3). Prior to reinstatement, Cunningham must comply with rule 35.13, provide an evaluation from a licensed health care professional verifying his fitness to practice law, and provide proof that he has made restitution of $500 to Mary Walker and $4000 to Sheila McDowell. The prior temporary suspensions for failure to respond to the Board are dismissed. The costs of this action are taxed to Cunningham pursuant to Iowa Court Rule 35.26(1), and reinstatement will not be ordered until all costs are paid. Iowa Ct. R. 35.26(3).

**LICENSE SUSPENDED.**