# IN THE SUPREME COURT OF IOWA

No. 18–1830

Filed January 25, 2019

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Appellee,

vs.

**BRYAN JOHN HUMPHREY,**

Appellant.

On review of the report of the Iowa Supreme Court Grievance Commission.

Grievance commission recommends suspension of an attorney's license for violations of ethical rules. **LICENSE SUSPENDED.**

Tara van Brederode and Andrew J. Boettger, Des Moines, for complainant.

Bryan John Humphrey, Fort Madison, pro se.

**MANSFIELD, Justice.**

An attorney failed to prosecute an appeal for one client, never communicated with a second client in a criminal matter, and failed to address his loss of a third client's abstract of title. The attorney also dragged his feet in responding to the Iowa Supreme Court Attorney Disciplinary Board (the Board) and, in one instance, misrepresented to the Board what he had done. In addition, the attorney has a significant history of discipline for similar misconduct. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Humphrey*, 812 N.W.2d 659 (Iowa 2012); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Humphrey*, 551 N.W.2d 306 (Iowa 1996); *Comm. on Prof'l Ethics & Conduct v. Humphrey,* 529 N.W.2d 255 (Iowa 1995).

The attorney and the Board reached a stipulation as to facts and ethical rule violations, which included a recommended sixty-day suspension of the attorney's license. The Iowa Supreme Court Grievance Commission found this sanction to be too lenient and recommended an indefinite suspension of at least eighteen months. We likewise find the stipulated sanction to be too lenient. We impose an indefinite suspension with no possibility of reinstatement for one year.

### I. Facts and Procedural History.

Bryan Humphrey is a solo practitioner in Fort Madison who was admitted to the Iowa bar in 1981. This disciplinary proceeding relates to Humphrey's representation of three different clients.

**A. The A.M. Matter.** In 2015 and 2016, Humphrey represented A.M., the mother, in a private termination of parental rights proceeding. After filing a notice of appeal on A.M.'s behalf, Humphrey did nothing to advance the appeal. Humphrey later explained that his client had indicated she no longer wished to pursue the appeal. However, as

Humphrey put it, "I did not make a responsive filing with the Court to dismiss the appeal, but rather allowed the dismissal to occur by order of the Court; obviously not a prudent decision on my part."

Thus, Humphrey ignored a notice of default from the clerk of the appellate courts, failed to pay an assessed penalty of $150, and simply allowed the appeal to be dismissed pursuant to Iowa Rule of Appellate Procedure 6.1202.

**B. The Gerety Matter.** In 2017, Daniel Francis Gerety was charged with operating while intoxicated, first offense, in violation of Iowa Code section 321J.2. He retained Humphrey to represent him and paid him an $800 retainer. Humphrey entered an appearance on Gerety's behalf on March 22, 2017.

When Gerety did not appear for his pretrial conference on July 11, the district court rescheduled the pretrial conference for August 22 and the trial for September 13. On August 22, Humphrey informed the court that Gerety wanted to submit a written guilty plea. On September 11, Humphrey moved to continue the trial on the ground that Gerety lived in California and needed more time to file the written guilty plea. The court granted a continuance, and Gerety ultimately signed the written guilty plea on September 19, which Humphrey filed on September 25.

Meanwhile, Gerety had mailed a complaint to the Board with a September 11 postmark, complaining that he had "never heard from" Humphrey after hiring him and paying an $800 retainer. As Gerety stated, "I would call & or text . . . at least 50 times over the next 5 mos. For an update or progress report & wouldn't hear *anything* from him. . . . I don't know what is going on."

**C. The Bergund Matter.** Also in 2017, Paul Bergund tried without success to get Humphrey to deliver an abstract of title, which Humphrey

had been holding since 1989 and had apparently lost or misplaced. When Bergund decided to file a complaint with the Board, Humphrey initially did not respond, but later told the Board he had "taken steps to remedy the problem by extending [an] offer to cover the cost of preparing a replacement abstract." This claim was not accurate; Humphrey had not communicated with Bergund. Two months later, after Bergund followed up with the Board, Humphrey finally did contact Bergund, telling him to check with the abstract company and find out what the cost of a replacement abstract would be.

**D. Failures to Respond to the Board.** Humphrey repeatedly ignored Board inquiries about the A.M., Gerety, and Bergund matters. In the A.M. matter, Humphrey left the Board's original certified letter unclaimed. He then failed to respond to a Board letter personally delivered to him by the Lee County Sheriff's Office. He also disregarded the Board's notice of complaint, finally responding only when this court issued a notice of possible temporary suspension of his law license.

In the Gerety matter, Humphrey ignored the Board's requests for copies of his correspondence with Gerety, an itemization of his time spent on the Gerety matter, and his trust accounting for Gerety's advance fees. In the Bergund matter, as in A.M., Humphrey did not respond to the Board's notice of complaint until he received a follow-up notice threatening a temporary suspension of his license.

**E. This Proceeding.** On June 7, 2018, the Board filed a complaint against Humphrey. Humphrey answered on July 16, admitting the factual allegations of the complaint but not the alleged ethical violations. On August 9, the parties entered into and submitted a stipulation as to facts, exhibits, disciplinary rule violations, mitigating and aggravating circumstances, and recommended sanction. *See* Iowa Ct. R. 36.16. The

parties' stipulation also waived formal hearing before the commission. *See id.* The parties jointly recommended a sixty-day suspension of Humphrey's law license.

On October 19, the commission accepted the parties' factual stipulation, agreed with most of the stipulated rule violations, but recommended a much longer suspension involving no possibility of reinstatement for eighteen months.

## II. Standard of Review.

"When the parties enter into a stipulation, . . . they are bound by the stipulated facts, which we interpret with reference to their subject matter and in light of the surrounding circumstances and the whole record." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Johnson*, 884 N.W.2d 772, 777 (Iowa 2016). However, "[w]e are not bound by stipulations as to ethical violations or the appropriate sanction." *Id.*

## III. Rule Violations.

We do not believe a detailed discussion of Humphrey's rule violations is needed. The parties stipulated, the commission concluded, and we agree that Humphrey violated Iowa Rule of Professional Conduct 32:1.3 (diligence) in all three matters, rule 32:1.4 (communication) in the Gerety and Bergund matters, and rule 32:3.2 (expediting litigation) in the A.M. and Gerety matters. Humphrey also violated rule 32:3.4(c) (disobeying an obligation under the rules of a tribunal) in the A.M. matter and rule 32:8.4(d) (engaging in conduct prejudicial to the administration of justice) in the Gerety matter. Furthermore, Humphrey violated rule 32:8.1(b) by failing to respond to lawful demands from the Board.

Additionally, the Board charged Humphrey with engaging in conduct prejudicial to the administration of justice, contrary to rule 32:8.4(d), in the Bergund matter. Bergund was not a litigated proceeding;

typically, violations of rule 32:8.4(d) arise in litigation. *See, e.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dunahoo*, 799 N.W.2d 524, 534 (Iowa 2011) ("Conduct is prejudicial to the administration of justice only when it impedes 'the efficient and proper operation of the courts or of ancillary systems upon which the courts rely.' " (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 768 (Iowa 2010))). Nevertheless, our precedent does indicate that Humphrey engaged in conduct prejudicial to the administration of justice when he failed to respond to the Board's inquiry in Bergund and later gave inaccurate information that further delayed a resolution of the matter. *See, e.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. West*, 901 N.W.2d 519, 525 (Iowa 2017). Lastly, we agree that Humphrey intentionally misrepresented to the Board what he had done to address the lost abstract of title in the Bergund matter, thereby violating rules 32:8.1(a) and 32:8.4(c).

However, the Board did overcharge this case to some extent. For guidance in future cases, we will discuss that overcharging briefly.

First, the Board alleged that Humphrey violated rule 32:8.4(a) in all three matters. Rule 32:8.4(a) provides, "It is professional misconduct for a lawyer to . . . violate . . . the Iowa Rules of Professional Conduct . . . ." We have repeatedly held that this rule "does not create a separate ethical infraction." *Dunahoo*, 799 N.W.2d at 534; *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Netti*, 797 N.W.2d 591, 598 n.1 (Iowa 2011); *Templeton*, 784 N.W.2d at 769. We reiterate that reminder today. Rule 32:8.4(a) does not need to be automatically tacked onto every count of an attorney disciplinary complaint.

Second, the Board alleged that Humphrey violated rule 32:3.4(c) in the Gerety and Bergund matters. We do not agree. Unlike in A.M., Humphrey disobeyed no court order in those two matters. *See Iowa*

*Supreme Ct. Att'y Disciplinary Bd. v. Hedgecoth*, 862 N.W.2d 354, 362 (Iowa 2015) ("Knowing disobedience occurs when noncompliance occurs notwithstanding the attorney's actual knowledge of the court order."). In Gerety, Humphrey put off court deadlines by seeking and obtaining unjustified extensions. That was improper, but it didn't violate rule 32:3.4(c). Bergund was not even a litigated proceeding.

Third, we are not convinced that Humphrey violated rule 32:1.15 (safekeeping client property) simply because he could not locate an abstract of title twenty-eight years after it had been entrusted to him. If that were true, any loss of client property would be transformed into an ethical violation. Rule 32:1.15 is not a strict liability provision; rather, it sets out a standard of care, that "[a] lawyer should hold property of others with the care required of a professional fiduciary." *See id.* cmt. [1]. Humphrey may have failed to adhere to that standard of care, but the record does not so establish by the required convincing preponderance of the evidence.

**IV. Discipline.**

We now consider the appropriate sanction. The parties have jointly recommended a sixty-day suspension, whereas the commission recommends an eighteen-month suspension. We are not bound by the parties' stipulation or the recommendation of the commission, although we give the commission's recommendation respectful consideration. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Turner*, 918 N.W.2d 130, 144 (Iowa 2018).

In determining the sanction, "we take guidance from prior cases." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Saunders*, 919 N.W.2d 760, 764 (Iowa 2018) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Smith*, 904 N.W.2d 154, 159 (Iowa 2017)). An appropriate sanction should consider

> the nature of the violations, the attorney's fitness to continue in the practice of law, the protection of society from those unfit to practice law, the need to uphold public confidence in the justice system, deterrence, maintenance of the reputation of the bar as a whole, and any aggravating or mitigating circumstances.

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Crotty*, 891 N.W.2d 455, 466 (Iowa 2017) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Casey*, 761 N.W.2d 53, 61 (Iowa 2009)).

Seven years ago, in 2012, although "[t]he core violation committed by Humphrey was the neglect of a single client matter," we suspended Humphrey's law license indefinitely with no possibility of reinstatement for three months. *Humphrey*, 812 N.W.2d at 666, 669. We acknowledged that "[t]aken on their own, Humphrey's current violations might merit no more than a reprimand." *Id.* at 669. Yet we emphasized that Humphrey's prior ethical transgressions from the 1990s "must be considered relevant aggravating factors." *Id.*

In 1994, Humphrey had received a public reprimand for failing to respond to inquiries from the Committee on Professional Ethics and Conduct. *Id.* In 1995, we had suspended Humphrey's license for sixty days after he neglected three probate matters and a postconviction-relief matter, and "stonewalled two judges, as well as the [Committee on Professional Ethics and Conduct]." *Humphrey*, 529 N.W.2d at 256–59. A year later, in 1996, we had suspended Humphrey's license indefinitely with no possibility of reinstatement for three years after he had neglected several matters, had been nonresponsive to courts, clients, and the Board, and had engaged in deceptive conduct with the court. *Humphrey*, 551 N.W.2d at 307–09.

We therefore reached the following conclusion in 2012:

> Although some time has lapsed from these violations, it is disheartening that Humphrey has resumed some of the

> habits that led to his difficulties and our imposition of severe sanctions in the 1990s. While the current violations do not involve fraud or dishonesty, and are limited to a single client matter, the earlier pattern of neglect and nonresponsiveness has reemerged. Therefore, despite the passage of time, and the somewhat narrower scope of the present violations as compared to those we addressed in 1995 and 1996, a substantial suspension is appropriate to protect the public and uphold the integrity of the profession.

*Humphrey,* 812 N.W.2d at 669.

Today is the fourth time we must consider suspending Humphrey's license. Once again, the violations amount to "neglect plus." Humphrey let three client matters slide, failed to communicate with two of those clients, acted deceptively with respect to one of those clients, and generally treated Board inquiries as a nuisance rather than items deserving a prompt and accurate response. The starting point for all three violations, though, was neglect. As the commission put it, "Humphrey has been sanctioned in the past multiple times for [exactly the] same behavior he now is in trouble for."

In light of Humphrey's prior disciplinary record, his current violations involving three separate clients, and our imposition of a three-month suspension in 2012 for related but less serious misconduct, we cannot approve the parties' proposed sixty-day suspension. It is not stringent enough.

The commission has recommended an indefinite suspension of at least eighteen months. An eighteen-month suspension primarily for neglect is not without precedent. In *Iowa Supreme Court Attorney Disciplinary Board v. Cunningham*, we imposed an eighteen-month suspension. 812 N.W.2d 541, 553, 554 (Iowa 2012). There, the attorney did not ensure his client properly completed discovery requests. *Id.* at 547. This ultimately led to the client being sanctioned without her knowledge. *Id.* The same attorney also failed to file a client's bankruptcy

petition. *Id.* at 549. He then misrepresented to the client and her divorce attorney that he had filed the petition. *Id.* He even sent a copy of a purported petition to his client to cover up the neglect. *Id.* In levying an eighteen-month suspension, we noted, "When multiple instances of neglect are involved and combine with other violations or cause significant harm to the clients, we have imposed a longer period of suspension." *Id.* at 551 (quoting *Iowa Supreme Court Att'y Disciplinary Bd. v. Carpenter*, 781 N.W.2d 263, 270 (Iowa 2010)).

Likewise, in *Iowa Supreme Court Attorney Disciplinary Board v. Joy*, we imposed an eighteen-month suspension on an attorney who had neglected several client matters, had "engaged in a pattern of misrepresentations designed to conceal his neglect," and had failed to cooperate and respond on time to the Board. 728 N.W.2d 806, 809–13, 814, 816 (Iowa 2007). There, we cited multiple cases imposing suspensions ranging from one to three years, stating, "Where neglect is compounded by other serious offenses . . . this court has suspended the license of the offending attorney for substantial periods of time." *Id.* at 815–16; *Carpenter*, 812 N.W.2d at 553.

Yet *Cunningham* and *Joy* involved misconduct more egregious than the misconduct here. In *Cunningham*, the attorney appeared to leave his practice suddenly, thus requiring other attorneys to take over and attempt to salvage his cases. *Cunningham*, 812 N.W.2d at 543–44. Cunningham's conduct caused significant harm to his clients, and he was completely nonresponsive to the Board, even during the temporary suspension that issued because of his nonresponsiveness. *Id.* at 554.

In *Joy*, the "persistent pattern of delinquencies, missed deadlines, and evasive and misleading statements" pertained to several estates, and in some cases, led to years of unnecessary delay. *Joy*, 728 N.W.2d at 812.

One estate was open for over five-and-a-half-years during which time *seven* delinquency notices were issued. *Id.* at 810. Another estate was open for over four years prior to closure, during which time two delinquency notices were issued and eventually another attorney was hired to complete the work. *Id.* at 809.

Humphrey's misconduct in the present case may not have been as serious as the misconduct in *Cunningham* or *Joy*, but his three prior suspensions for neglect stand out. In *Iowa Supreme Court Attorney Disciplinary Board v. Hearity*, another case involving neglect, we imposed a one-year suspension. 812 N.W.2d 616, 622–23 (Iowa 2012). Hearity neglected two cases in violation of rule 32:1.3. *Id.* at 618–19 They included one estate that was needlessly left open for three and one-half years and one appeal Hearity failed to prosecute. *Id.* As to the appeal, Hearity's conduct was similar to Humphrey's here. When a criminal client filed a *pro se* appeal following trial, Hearity was notified that he was presumed counsel of record on the appeal, and he was instructed to promptly prosecute the appeal or file a motion to withdraw. *Id.* at 617. Hearity took no action on the appeal, and the appeal was dismissed after he failed to respond to a notice of default. *Id.* at 617–18. For these and some other violations we imposed a one year suspension and required Hearity to successfully complete the Multistate Professional Responsibility Examination (MPRE) prior to reinstatement. *Id.* at 623.

*Hearity* also involved additional, significant misconduct. Overall, his ethical violations spanned five client matters and included neglect, unreasonable fees, failure to communicate about fees, failure to properly terminate representation, failure to respond to the Board, unauthorized practice of law, and making a false statement to the court. *Id.* at 616, 618–21. Hearity had also been suspended on two prior occasions, once for

failure to comply with an obligation owed to the Iowa Department of Revenue and once on a temporary basis for not responding to board inquiries. *Id.* at 617.

We find *Hearity* a relevant precedent here. After considering Humphrey's violations, his fitness to continue practicing law, the protection of society, the need to uphold public confidence in the justice system and in the bar, and especially Humphrey's prior disciplinary record, we suspend Humphrey's license indefinitely with no possibility of reinstatement for one year. As in *Hearity*, we also direct that Humphrey take and pass the MPRE before any reinstatement. *See id.* at 623.

We note Humphrey "continues to fail to honor the ethical boundaries of the profession." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Powell*, 901 N.W.2d 513, 517 (Iowa 2017). As we stated in *Powell,* "At some point, public protection and the reputation of the profession justify the revocation of a license to practice law." *Id.*

**V. Disposition.**

Humphrey's license to practice law in the State of Iowa is suspended with no possibility of reinstatement for one year from the filing of this opinion. This suspension applies to all facets of the practice of law. *See* Iowa Ct. R. 34.23(3). Humphrey must comply with all notification requirements of Iowa Court Rule 34.24. Humphrey must file a written application for reinstatement of his license. *See id.* r. 34.23(1). Humphrey must comply with all applicable requirements of Iowa Court Rule 34.25 for reinstatement and establish he has not practiced law during the suspension period. Before reinstatement, Humphrey must also successfully complete the MPRE. The costs of the proceeding are taxed to Humphrey pursuant to Iowa Court Rule 36.24(1).

**LICENSE SUSPENDED.**